EL PASO HEALTHCARE SYSTEM,
LTD., d/b/a Las Palmas Medical
Center, Appellant,

v.

Vincenza CARMONA, Appellee.

No. 08–03–00129–CV.

Court of Appeals of Texas,
El Paso.

March 17, 2005.

Rehearing Overruled April 13, 2005.

Joseph L. Hood Jr., Scott, Hulse, Marshall, Feuille, Finger & Thurmond, El Paso, for Appellant.

John P. Mobbs, John Andrew Wenke, Law Offices of John A. Wenke, El Paso, for Appellee.

Before Panel No. 4 BARAJAS, C.J., LARSEN, and McCLURE, JJ.

## *OPINION*

RICHARD BARAJAS, Chief Justice.

This is an appeal from a jury verdict in a case arising under the Texas Commission on Human Rights Act ("TCHRA") claiming damages based upon allegations of age discrimination. The jury awarded $85,952 in back pay, $21,536 for loss of past employment benefits, $75,000 in compensatory damages, prejudgment interest on the actual damages, $1.3 million in exemplary damages, attorneys fees of $54,425, conditional awards of appellate attorneys fees, and post-judgment interest on all the amounts awarded. The Appellant raises ten issues on appeal. Issues One through Five challenge the legal and factual sufficiency of the evidence to support the jury's answers to the questions submitted. The remaining issues challenge the legal and factual sufficiency of the evidence to support the jury's finding that Appellant acted with malice or reckless indifference, the legal and factual sufficiency of the evidence to support the jury's finding regarding lost employment benefits, the trial court's submission of a circumstantial evidence instruction, whether the cap on damages under the Texas Commission on Human Rights Act applies, and whether, if the cap applies, it also limits the award of front pay found by the jury. For the reasons stated, we reverse and remand.

## I. *ISSUES SUBMITTED ON APPEAL*

Appellant has submitted ten issues on appeal. Issues One through Five complain that the evidence supporting the jury's answers regarding a finding of age discrimination under the TCHRA, is legally and factually insufficient to support the findings. Because our ruling on Issues One through Five is dispositive of this appeal, we do not reach the remaining issues.

## II. *SUMMARY OF THE EVIDENCE*

Appellee, Vincenza Carmona had been employed as a nurse in El Paso since 1979 and employed by Appellant since 1988. Appellee originally was employed as an oncology nurse by Appellant, but in 1992, became a Case Manager which involved, among other responsibilities, overseeing the placement of patients within the hospital. In May of 1997, Appellee applied for a new position that had recently been created in the Admitting Department, Admitting Nurse. The same position had been eliminated approximately two years earlier during a previous reduction in force but was recreated in 1997. At that time, Juan Murillo, the Assistant Director over the Admitting Department, interviewed Appellee for the position and recommended that she be allowed to transfer into the new position. Appellee was 60 years old at the time of the transfer to the Admitting Department. Appellee acknowledged having a good working relationship with Murillo while she was employed as the Admitting Nurse. She did not have any complaints about unfair treatment on the part of Murillo or Vicky Moreno, her immediate supervisor.

Because of cyclical patient census counts which impact the patient population in the hospital, the hospital occasionally implements steps to control expenses during periods of declining populations. Because hospitals have high fixed costs, wages and salaries are the largest controllable expense. Consequently, the hospital may initiate a reduction in force or RIF, as a cost-cutting measure and has done so in the past.

Appellant's corporate parent compiles and disseminates statistical data that enables the hospital to compare its staffing levels with those of other hospitals. When considering the implementation of a RIF as a cost-saving measure, upper management, in this case, Terry Smith, the Chief Financial Officer, instructed directors such as Murillo to reduce the number of full-time employees within their respective department. The directors were allowed to review the staffing needs of the various departments and then made a recommendation about which position should be considered for elimination.

While evaluating the Admitting Department, Murillo was provided with a list of employees from the Human Resources Department. The list identified the employees within the department by name, job title, and hire date. The information did not contain any information reflecting the employee's date of birth or age.

Smith had informed Murillo one to two weeks before the elimination of Appellee's position that Murillo should reduce the number of employees in the Admitting Department by one employee. Murillo was tasked with reviewing the functions of the department and determining which position was the least essential.

Murillo believed that Appellee's position was beneficial but felt that most of Appellee's job responsibilities had been handled by other employees regularly in the past, and could, therefore, be absorbed by other employees in the future. Appellee worked a regular schedule of Monday through Friday from 8 a.m. to 5 p.m., though the Admitting Department was open 365 days

per year. When Appellee was not on duty, other employees assisted admissions with questions related to the admission of patients. Murillo provided testimony explaining why he felt that other positions within the Admitting Department were more critical and not appropriate for elimination.

Murillo presented his recommendation to his supervisor, Waddell and then to Terry Smith. Smith then decided to eliminate Appellee's position. Smith did not know Appellee's age.

On March 9, 2000, Appellee was notified that her position was being eliminated as part of a reduction in force. Appellee was 63 years of age and had been employed by the hospital since 1988. She was both the oldest and highest paid employee in the department. Upon being terminated, Appellee was provided with two weeks pay in lieu of notice, payment of her accumulated "paid time off," and $6,800 in severance pay.

During November and December of 1999, Appellant created another position in a different department known as Resource Management Specialist in the Case Management Department. Appellee contends that the creation of this position was a pretext for the elimination of her position and her replacement by a younger employee. At the time the position was filled and before the loss of her position, Appellee made some inquires about the scope of the position but did not receive a satisfactory response from her supervisors other than an explanation that the new position was not a replacement for hers. The evidence presented established that Appellant did not formally adhere to its internal reduction in force policies when implementing the RIF. Also presented by Appellee was some statistical evidence describing demographic information about the employees who were affected by the RIF during the time period of May 1999 to May 2001.

Appellee sued, contending that her age was a motivating factor and consideration in the elimination of her position in violation of the TCHRA.

The jury agreed and the trial court entered a judgment in favor of Appellee from which Appellant appeals.

## III. *DISCUSSION*

Appellant's first five issues attack the legal and factual sufficiency of the evidence of various aspects of the jury's verdict. We agree with Appellee that these issues should be read as an attack on the legal and factual sufficiency of the evidence supporting the jury's finding that Appellee's age was a motivating factor in Appellant's decision to terminate Appellee.

### A. Legal and Factual Sufficiency Standard of Review

A "no evidence" or legal insufficiency point is a question of law which challenges the legal sufficiency of the evidence to support a particular fact finding. There are basically two separate "no evidence" claims. When the party having the burden of proof suffers an unfavorable finding, the point of error challenging the legal sufficiency of the evidence should be that the fact or issue was established "as a matter of law." When the party without the burden of proof suffers an unfavorable finding, the challenge on appeal is one of "no evidence to support the finding." *See Creative Manufacturing, Inc. v. Unik*, 726 S.W.2d 207, 210 (Tex.App.-Fort Worth 1987, no writ). The standard of review requires a determination by the appellate court as to whether, considering only the evidence and inferences that support a factual finding in favor of the party having the burden of proof, in a light most favorable to such findings, and disregarding all

evidence and inferences to the contrary, there is any probative evidence which supports the finding. *Garza v. Alviar,* 395 S.W.2d 821, 823 (Tex.1965); *Southwest Craft Center v. Heilner,* 670 S.W.2d 651 (Tex.App.-San Antonio 1984, writ ref'd n.r.e.); *Terminix Intern., Inc. v. Lucci,* 670 S.W.2d 657, 662 (Tex.App.-San Antonio 1984, writ ref'd n.r.e.); *Dayton Hudson Corp. v. Altus,* 715 S.W.2d 670, 672 (Tex. App.-Houston [1st Dist.] 1986, writ ref'd n.r.e.). If more than a scintilla of evidence supports the finding, the "no evidence" point fails. *Tseo v. Midland Am. Bank,* 893 S.W.2d 23, 25 (Tex.App.-El Paso 1994, writ denied); *Hallmark v. Hand,* 885 S.W.2d 471, 474 (Tex.App.-El Paso 1994, writ denied).

"Insufficient evidence" or factual insufficiency involves a finding that is so against the great weight and preponderance of the evidence as to be manifestly wrong. When the party having the burden of proof complains of an unfavorable finding, the point of error should allege that the findings "are against the great weight and preponderance of the evidence." The "insufficient evidence" point of error is appropriate only when the party without the burden of proof on an issue complains of the court's findings. *Neily v. Arron,* 724 S.W.2d 908, 912 (Tex.App.-Fort Worth 1987, no writ).

The test for factual insufficiency points is set forth in *In re King's Estate,* 150 Tex. 662, 244 S.W.2d 660 (1951). In reviewing a point of error asserting that a finding is against the great weight and preponderance of the evidence, we must consider all of the evidence, both the evidence which tends to prove the existence of a vital fact, as well as evidence which tends to disprove its existence. It is for the jury to determine the weight to be given to the testimony and to resolve any conflicts in the evidence. *Carrasco v.*

*Goatcher,* 623 S.W.2d 769, 772 (Tex.App.-El Paso 1981, no writ). The jury's finding should be sustained if there is some probative evidence to support it and provided it is not against the great weight and preponderance of the evidence. *Id.* The parlance used by the courts of appeals is that such a finding "shocks the conscience" or that it is "manifestly unjust," limited by such phrases as "the jury's determination is usually regarded as conclusive when the evidence is conflicting," "we cannot substitute our conclusions for those of the jury," and "it is the province of the jury to pass on the weight or credibility of a witness's testimony." *Kimsey v. Kimsey,* 965 S.W.2d 690, 700 (Tex.App.-El Paso 1998, pet. denied); *Beall v. Ditmore,* 867 S.W.2d 791, 795 (Tex.App.-El Paso 1993, writ denied). Thus, we cannot substitute our judgment for that of the fact finder even if we find a fact contrary to that found by the jury, provided the jury finding is supported by probative evidence and is not against the great weight and preponderance of the evidence. If, however, the verdict is so contrary to the great weight and preponderance of the evidence as to be manifestly unjust, the point should be sustained.

## B. Legal Sufficiency of the Evidence

The parties have agreed that Appellee has met the threshold burden of proof establishing that she was discharged, qualified for the job, and within the protected class. The jury charge included a single question regarding the age discrimination complaint. The jury answered "Yes" to the following question:

Question No. One

Was VINCENZA CARMONA'S age a motivating factor in EL PASO HEALTHCARE SYSTEM, LTD.'s decision to eliminate her position?

A "motivating factor" in an employment decision is a reason for making the decision at the time it was made. There may be more than one motivating factor for an employment decision.

First, we examine only the evidence and inferences that support a factual finding in favor of the party having the burden of proof. The jury heard testimony from seven witnesses concerning Appellant's conduct including Appellee and her husband. It is clear from the evidence presented that Appellee was a member of a protected class, qualified to perform a job, who was terminated. The evidence established that a younger woman was hired to perform tasks for the hospital which were similar to the job held by Appellee. In examining only the evidence that supports the jury's findings, we find there is more than a scintilla to support Appellee's claim that age was a motivating factor in Appellant's decision to eliminate her position. Appellant's no-evidence points fail under Issues One through Five so that portion of those issues is overruled.

### C. Factual Sufficiency of the Evidence

■ Next, we consider all of the evidence presented, both the evidence which tends to prove the existence of a vital fact, as well as evidence which tends to disprove its existence. While we agree that there is more than a scintilla of evidence to support the jury's verdict when considering only the evidence favorable to Appellee to support the verdict, we agree with Appellant however, when considering the cumulative evidence, that the finding is so contrary to the great weight and preponderance of the evidence that it is clearly wrong and manifestly unjust.

Appellee argues that she has presented a *prima facie* case of discrimination by showing that she was discharged from her employment, was qualified for the job, was within the protected class at the time of the discharge, and was replaced by someone outside the protected class or by someone younger, or otherwise discharged because of her age. Appellant agrees that Appellee was discharged from her employment, was a member of the protected class, and was an exemplary employee who was qualified for the job. An issue arises, however, over the last element of the case regarding the replacement of Appellee by a younger employee.

■ The *prima facie* case in an age discrimination case requires proof that: (1) the employee was discharged; (2)[s]he was qualified for the position; (3)[s]he was a member of a protected class at the time of discharge; and (4)[s]he was replaced by someone outside the protected class or otherwise show that [s]he was discharged because of his age. *See Wal–Mart Stores, Inc. v. Canchola,* 121 S.W.3d 735, 739 (Tex. 2003); *Trico Technologies Corp. v. Rodriguez,* 907 S.W.2d 650, 651 (Tex.App.-Corpus Christi 1995, no writ).

■ Holding that Appellee's evidence does establish a *prima facia* case of age-based discrimination, we turn to consider Appellee's argument that Appellant's reason for elimination of Appellee's position as part of a routine reduction in force, was pretextual. We agree with Appellant that once an employer comes forward with a non-discriminatory explanation for its decision, the burden shifts back to the employee to show that the explanation is pretextual. *McDonnell Douglas Corp. v. Green,* 411 U.S. 792, 802–03, 93 S.Ct. 1817, 1824–25, 36 L.Ed.2d 668 (1973). In the case before us, however, Appellant presented ample evidence to support its legitimate business-based decision to implement a reduction in force with resulted in Appellee's loss of her position with no corresponding evidence of age-based discrimination. We

do not agree that Appellee's evidence establishes that the articulated reason was a pretext for Appellant's elimination of the position for an illegal reason.

■■■■ The TCHRA prohibits an employer from discharging or in any other way discriminating against an employee because of the employee's age. *Wal–Mart Stores, Inc.,* 121 S.W.3d at 739. *See* Tex. Lab.Code Ann. §§ 21.051–.556. The Legislature intended to correlate state law with federal law in employment discrimination cases when it enacted the TCHRA. *Id.* at § 21.001; *see Wal–Mart Stores, Inc.,* 121 S.W.3d at 739; *see also NME Hosps., Inc. v. Rennels,* 994 S.W.2d 142, 144 (Tex.1999). In discrimination cases that have not been fully tried on the merits, we apply the burden-shifting analysis established by the United States Supreme Court. *Wal–Mart Stores, Inc.,* 121 S.W.3d at 739; *see Reeves v. Sanderson Plumbing Prods., Inc.,* 530 U.S. 133, 142–43, 120 S.Ct. 2097, 147 L.Ed.2d 105 (2000); *St. Mary's Honor Ctr. v. Hicks,* 509 U.S. 502, 506–07, 113 S.Ct. 2742, 125 L.Ed.2d 407 (1993); *Tex. Dep't of Cmty. Affairs v. Burdine,* 450 U.S. 248, 252–53, 101 S.Ct. 1089, 67 L.Ed.2d 207 (1981); *McDonnell Douglas Corp.,* 411 U.S. at 802–03, 93 S.Ct. at 1824–25; *M.D. Anderson Hosp. v. Willrich,* 28 S.W.3d 22, 24 (Tex.2000) (per curiam). But when a discrimination case has been fully tried on its merits, as in this case, a reviewing court does not engage in a burden-shifting analysis. *Wal–Mart Stores, Inc.,* 121 S.W.3d at 739; *see also Rubinstein v. Adm'rs of Tulane Educ. Fund,* 218 F.3d 392, 402 (5th Cir.2000). After reviewing all the evidence, we inquire whether the evidence is legally and factually sufficient to support the jury's ultimate finding. *See Wal–Mart Stores, Inc.,* 121 S.W.3d at 739; *see also Rutherford v. Harris County, Tex.,* 197 F.3d 173, 180–81 (5th Cir.1999). At trial, it was Appellee's burden to prove that her age was a motivating factor in Appellant's decision to terminate her. *Wal–Mart Stores, Inc.,* 121 S.W.3d at 739; *see also Quantum Chem. Corp. v. Toennies,* 47 S.W.3d 473, 480 (Tex.2001) (holding that "a motivating factor" is the plaintiff's standard of causation in a TCHRA unlawful employment practice claim).

■■■■ Appellee is critical of the decision-making process followed by Appellant which does not, by itself, prove that Appellee's age was a motivating factor in her termination. An at-will employer does not incur liability for carelessly forming its reasons for termination. *See Tex. Farm Bureau Mut. Ins. Cos. v. Sears,* 84 S.W.3d 604, 609 (Tex.2002); *Garcia v. Allen,* 28 S.W.3d 587, 591 (Tex.App.-Corpus Christi 2000, pet. denied). As long as its reason for terminating Appellee was not illegal, Appellant could have fired Appellee, an at-will employee, for any reason, or for no reason at all. *Sears,* 84 S.W.3d at 609. She must show that the reason proffered by Appellant is "false, *and* that discrimination was the real reason." *St. Mary's Honor Ctr.,* 509 U.S. at 515, 113 S.Ct. at 2752 (emphasis in original).

Appellee points to the creation of a position entitled Resource Management Specialist Registration/Admitting within the Case Management Department as evidence of Appellant's intention to replace Appellee with a younger employee. The evidence established that during the fall of 1999, Appellant reviewed some functions of the Case Management Department because of problems related to the admission documentation of patients which resulted in problems with Medicaid reimbursement. Smith ultimately concluded that the problems with Las Palmas were related to the Case Management Department's monitoring of patients once they were admitted to the hospital.

In November of 1999, Nancy Rout, the Chief Nursing Officer, requested a copy of Appellee's job description from Moreno, Appellee's supervisor. On December 12, 1999, Appellant posted a new job opening for Resource Management Specialist. In January of 2000, Appellee learned that Karen Mathis had been hired to fill the new position. Mathis, like Appellee, had previously worked in case management. Mathis had been laid off during an earlier RIF. Appellee was asked to orient Mathis and requested a copy of Mathis's job description for that purpose. The job description posted for the Mathis position was, in many respects, similar to the job description for the position held by Appellee. Both Murillo and Moreno explained that many departments within the hospital copied job descriptions when creating a posting for a new job. Mathis's job description, however, also included additional responsibilities.

■ We do not agree that the fact that Appellant created a similar position in a different department several months before the elimination of Appellee's position is evidence of an intent to replace Appellee with a younger employee nor do we believe that such a business decision, standing alone is any evidence of the consideration of Appellee's age as a reason to eliminate her position. Appellee testified that she had always enjoyed a good working relationship with all her supervisors and had been given excellent performance evaluations. She presented insufficient evidence to suggest that age was ever considered in connection with any management decisions made regarding the creation of the Resource Management Specialist position given to Mathis. She did not even contend that Mathis's position or hiring was a pretext for the elimination of her position. Appellee's attorney made the speculative leap in logic to argue that the fact of a similar position in a different department of the hospital, created by different supervisors, reporting to a different chain of command, created in response to a specific management problem that existed for several months before the elimination of Appellee's position, is evidence of a scheme of age discrimination. We do not agree.

When Appellee became aware of the similarities between the job descriptions, she inquired about the situation by calling Murillo, Sally Walker, the Director of Human Resources, and Moreno who either did not respond to her inquires or did not have any explanation about the similarity. Appellee eventually spoke with Nancy Rout, the Chief Nursing Officer, who explained that Mathis would be performing different tasks and was not a replacement for Appellee. Appellee admitted that Mathis was not performing the same job as she had been and conceded that Mathis did not physically replace her as the admitting nurse. The admitting nurse position has not been filled since Appellee's position was eliminated in March of 2000.

■ Appellee presented evidence that Appellant had adopted policies regarding the procedures to be followed during a reduction in force. The evidence reflected that management did not strictly follow the requirements for notification of employees of the possibility of a need for a reduction and force and did not formally convene an "overview" committee to review the decisions related to the elimination of positions. The evidence presented regarding this issue, however, also indicated that Appellant's management did meet as a group to review the decisions regarding the elimination of all the positions affected including Appellee's, though the group was never formally designated the "overview" committee. Appellee was paid money in lieu of notice. Significantly, there was insufficient evidence presented

that any decisions made included any discriminatory motives. There was insufficient evidence presented to suggest that Appellee was treated differently from any other employee whose position was eliminated as a result of the reduction in force. There was insufficient evidence of any harm caused by the technical failure of Appellant to adhere to its own internal policy. Appellee urges that Appellant's failure to strictly adhere to its own internal policy is evidence of discrimination. Appellee cites to two cases in support of its position that the failure to follow a policy may be evidence of discrimination. Both cases acknowledge that the failure to follow a policy may be some evidence of discrimination but each involves a fact situation replete with specific examples of discriminatory conduct. Each is clearly distinguishable from the facts presented before us today. Here there is insufficient evidence that the failure to follow the policy impacted Appellee in any way nor is there any evidence that the failure was as a result of a motive based upon discriminatory reasons. We do not hold that the mere technical non-compliance with an internal policy is sufficient evidence of discriminatory behavior without more.

Appellee also argues that the failure of several supervisors to return Appellee's phone calls is indicative of a discriminatory intent on the part of Appellant. Again, Appellee's complaints are nothing more than mere suspicion, speculation, and supposition. Noting that one supervisor did discuss the situation with Appellee, we do not find that the non-response of the other supervisors is sufficient evidence of discriminatory intent on the part of Appellant to support the jury's conclusion. While a return phone call would certainly have been courteous and polite, the failure to do so does not establish a basis for a claim of discrimination.

Appellee also presented evidence that she had applied for other positions at the hospital for which she was not hired which she contends was further evidence of discrimination. The record is confusing and unclear about which positions Appellee applied for and whether she was qualified for the positions in question. What is clear from the evidence is that Appellee testified that she did not know what specific qualifications were required for the positions that she was not offered nor did she know anything about the individuals hired. There was no other evidence presented that established discrimination related to Appellant's failure to rehire Appellee. We do not agree that the anecdotal testimony provided by Appellee that she had applied for a few positions with Appellant's hospitals and was not hired for any of the positions is evidence of age-based discrimination. We also note that the trial court record reflects that Appellee's attorney acknowledged that the evidence of Appellee's attempts to obtain employment from Appellant was not evidence of a discriminatory intent on the part of Appellant and he stated the evidence was offered for the purpose of showing that she attempted to mitigate her damages. Now, on appeal, Appellee argues that the failure to hire rises to the level of creating a "suspicion of mendacity." We do not agree. Appellee's suspicions or beliefs do not create evidence.

Finally, we consider Appellee's statistical evidence proffered as proof of a discriminatory scheme during the trial. Appellee called Terry Smith, the Chief Financial Officer, and questioned him about one of Appellant's exhibits at trial, a list of the individuals who were affected as part of the RIF in 2000. The list included the names of the individuals, the position held, and the age of each. Appellee ques-

tioned Mr. Smith about whether this list reflected a disproportionate number of older people included in the pool of employees whose positions were terminated. Mr. Smith responded that he believed that the "list is representative of the age groups of all the employees there.... This probably represents in general all of the age classifications." In her brief, Appellee cites to various exhibits included in the evidence submitted to the jury which consist of an assortment of charts listing the individuals employed in the Admitting Department at the time of the RIF, a list of employees terminated during the 2000 RIF including the age of each, and a list of all employees terminated during the time period from May 1999 to May 2001 including the age of each and information on whether the individual was rehired and if so, when. No witness testified about the significance of these statistics nor how the statistics are evidence of a discriminatory intent on the part of Appellant. They provide insufficient evidence that Appellee's position was eliminated on a pretextual basis. A review of Appellee's exhibits, which includes a list of employees included in the reduction in force by Appellant, supports Appellant's argument that the elimination of Appellee's position was merely part of a business-wide reduction in force that impacted many employees. A finding that age was a motivating factor in the elimination of Appellee's position because of the sparse statistics provided is clearly wrong and manifestly unjust. Any conclusion to be drawn from the documents would be nothing more than blatant speculation and as such, a finding of discrimination would be manifestly unjust.

In substance, the parties agree that Appellant contends that Appellee was terminated as a result of the elimination of her position as a result of the reduction in force without regard to her age. Appellee asserts that the reasons proffered by Appellant are pretextual and that the evidence of pretext is established by the following evidence: the hiring of Mathis two months before the elimination of Appellee's position to perform a similar job, the failure of various supervisory employees to return Appellee's phone calls to discuss Mathis's job description, a failure on the part of Appellant to strictly follow its own reduction in force policy prior to eliminating Appellee's position, Appellant's failure to hire Appellee for another position after the RIF, and certain statistical evidence presented to the jury regarding the numerical demographics of the age of the employees who were terminated by Appellant during the time period from May 1999 to May 2001.

 After review of the entire appellate record, we conclude Appellee has presented insufficient evidence to show that Appellant's decision to eliminate her position was motivated by her age. There is insufficient evidence that the reasons proffered by Appellant were false. There is insufficient evidence of an age-based motivating factor and the jury finding that such existed is against the great weight and preponderance of the evidence. Appellee has proposed that the possible falsity of the reasons the defendant puts forth "may, together with the elements of the prima facie case, suffice to show intentional discrimination." *St. Mary's Honor Ctr.*, 509 U.S. at 511, 113 S.Ct. at 2749; *see also Reeves*, 530 U.S. at 147–49, 120 S.Ct. at 2108–10. But even if the reasons Appellant cited for terminating Appellee were false, she still bore the ultimate burden to prove that Appellant discriminated against her because of her age. *Reeves*, 530 U.S. at 147–49, 120 S.Ct. at 2108–10. The relevant inquiry is not whether the business decisions made by Appellant were appro-

priate or well-founded. *See Wal–Mart Stores, Inc.,* 121 S.W.3d at 740.

Issues One through Five on the challenge of the factual sufficiency of the evidence to support the jury's verdict are sustained. Because Issues One through Five are dispositive of this appeal, we do not reach Issues Six through Ten.

We, therefore, having sustained Appellant's Issues One through Five on the basis of factual insufficiency of the evidence, reverse the judgment of the trial court and remand this case to the trial court for further proceedings consistent with this opinion.

LARSEN, J., not participating.