COURT OF APPEALS
EIGHTH DISTRICT OF TEXAS
EL PASO, TEXAS



| | | |
|---|---|---|
| VASILE MARINCASIU AND STACY MARINCASIU, | § | No. 08-12-00288-CV |
| | § | |
| Appellants, | | On Appeal from the |
| | § | |
| v. | | 348th District Court |
| | § | |
| STEPHEN C. DRILLING, | | of Tarrant County, Texas |
| | § | |
| Appellee. | | (TC# 348-249594-10) |
| | § | |

## O P I N I O N

Vacile and Stacy Marincasiu appeal the trial court's judgment granting Stephen C. Drilling a first lien on certain real property located at 1702 Egret Lane, Southlake, Texas, 76092 (hereinafter "the Southlake Property"); allowing him to foreclose on the property; and clearing title to the land. On appeal, the Marincasius challenge the factual and legal sufficiency of the trial court's findings that Drilling had a judgment lien on the Southlake Property at the time of sale because the previous owner's homestead protection elapsed pre-sale upon his divorce. Alternatively, the Marincasius contend that their bank's mortgage lien has priority over Drilling's judgment lien through equitable subrogation of a prior mortgage on the Southlake Property, and that they may assert the bank's lien derivatively as the intended beneficiaries of the subrogated mortgage. We reverse and render in favor of the Marincasius on the issue of

homestead protection at the time of sale.

## BACKGROUND

### *Factual History*

Prior to 2009, Patrick E. Greenlaw and his wife Debra, both non-parties to the current litigation,[1] resided on the Southlake Property. The Southlake Property was subject to a mortgage from the Provident Bank d/b/a PCFS Financial Services executed on July 25, 2000 and worth $299,200.00. The Greenlaws claimed a homestead exemption for the Southlake Property on their ad valorem tax filings in February 2000. On May 4, 2007, Drilling obtained a final judgment for $245,600.00[2] with a post-judgment interest rate of 8.25 percent in a lawsuit against Patrick Greenlaw. On August 15, 2008, Greenlaw and his wife divorced, with Patrick Greenlaw receiving the entire Southlake Property. The couple had no children together. The divorce decree specifically named the Southlake Property as Patrick Greenlaw's homestead and granted Debra Greenlaw a $10,000 owelty lien on the property. Tarrant County property tax records from 2008 and 2009 also list the Southlake Property as an exempt homestead, but identify the owner as "GREENLAW, PATRICK ETUX DEBRA" through 2009.

Following the Greenlaw's divorce, Drilling recorded and indexed an Abstract of Judgment from his lawsuit against Greenlaw with the Tarrant County Clerk's Office on March 31, 2009. Drilling claimed in an affidavit that Greenlaw put the Southlake Property up for sale on April 6, 2009, six days after Drilling filed the Abstract of Judgment. In support of that claim, Drilling attached a Zillow.com real estate listing for the Southlake Property stating

---

[1] In their original answer, the Marincasius filed a third-party claim against Patrick Greenlaw for breach of warranty of title and breach of the covenant of seisen. Their second amended petition makes no reference to the third-party claim against Greenlaw. In their motion for new trial, the Marincasius note that "Mr. Greenlaw is deceased and not a party to this suit."

[2] The principal amount of the judgment was $235,000.00. The trial court also assessed $4,700.00 in pre-judgment interest and $5,900.00 in attorney's fees.

the property came on the market on April 6, 2009. On September 28, 2009, Greenlaw sold and conveyed the Southlake Property to the Marincasius by warranty deed for $318,788.28.[3] Funds provided by SFMC, L.P., d/b/a Solutions Funding Co., the Marincasius' mortgagee and a non-party to this litigation, were used to clear the remaining $273,362.00 mortgage lien held by the Provident Bank, Greenlaw's mortgagee. Driller states in his affidavit that Greenlaw had moved to Colorado for a "significant period of time" after his divorce but before the Marincasius purchased the house in September 2009. Both parties pleading's appear to suggest that Greenlaw died, possibly of terminal cancer, sometime after the sale of the Southlake Property, although that fact is not contained in the record itself. Greenlaw did not submit any affidavits or testimony during the course of this litigation.

### *Procedural History*

Driller filed suit against the Marincasius for declaratory judgment, foreclosure of his lien, and attorney's fees. Both parties moved for summary judgment based on Driller's affidavit, the abstract of judgment from the previous lawsuit, the Greenlaw divorce decree, Tarrant County property and tax records, deeds for the Southlake Property, and the HUD Settlement form and wire transfer confirmation from the Greenlaw-Marincasiu transaction. There is no evidence in the record indicating that the trial court ever ruled on those motions. Following a June 5, 2012 bench trial in which the parties stipulated that evidence presented in prior summary judgment motions would constitute the evidence for trial, the trial court entered judgment in favor of Drilling, and the Marincasius requested findings of fact and conclusions of law.

---

[3] Drilling also claims in his brief that he introduced "uncontroverted evidence" that prior to the sale, Greenlaw "leased the [Southlake] Property to Appellants on a non-temporary basis, never to return." However, Drilling provided no citation to any evidence in the record for his contention that a lease existed between Greenlaw and the Marinsciaus. "We will not address arguments made based on evidence not in the record." *Burruss v. Citibank (South Dakota), N.A.*, 392 S.W.3d 759, 762 (Tex.App.--Dallas 2012, pet. denied)(finding that allegations made without any citation to or basis in summary judgment affidavits were waived). Any contention that a "non-temporary" lease existed prior to sale is waived due to lack of adequate briefing. *See* TEX.R.APP.P. 38.1.

In Findings of Fact Nos. 5, 8, 9, 14, 15, 16, 17, 18, 19, 20, and 22, the trial court found that Drilling properly abstracted his judgment, that the lien validly attached to the Southlake Property, and that Greenlaw could not claim homestead protection because "[f]or a significant period of time prior to September 28, 2009," Greenlaw resided in Colorado and not on the Southlake Property, and "[n]o evidence was offered or admitted that, following August 15, 2008, Greenlaw both overtly used the Property as his individual homestead and intended to claim the Property as his individual homestead." It also found that the Marincasius had constructive notice of the lien, they did not satisfy "any portion of the Abstract of Judgment" upon purchase, and Greenlaw used funds from the sale of the Southlake Property to pay off his own mortgage on the property.

The trial court also made findings (Findings of Fact Nos. 23 through 30 and 34 through 46) that the Marincasius stated only an equitable subrogation claim, that they could not claim equitable subrogation because they acted voluntarily, and that Drilling would be prejudiced by the subrogation, particularly since he committed no inequitable act toward the Marincasius. The trial court further found that "Plaintiff's lien upon the Property by virtue of the prior filed Abstract of Judgment is superior to Defendants' title in and to the Property." The trial court largely reiterated these same fact-findings verbatim in its conclusions of law.

Following their request for fact-findings, the Marincasius moved for a new trial, which the trial court denied. The Marincasius timely appealed.

**DISCUSSION**

In Issues One and Two, the Marincasius contend that the trial evidence was legally and factually insufficient to support the trial court's finding that the Southlake Property was not Greenlaw's homestead at the time of sale. Drilling responds that the Greenlaws' divorce

4

destroyed any homestead protection for the Southlake Property because the couple was childless, or, alternatively, that the Marincasius bore the burden of proving that Patrick Greenlaw reasserted homestead after his divorce and failed to meet that burden. We disagree.[4]

### Legal and Factual Sufficiency Standard of Review

The standard of review for factual and legal sufficiency challenges remains the same whether a judge or a jury served as fact finder. *Raman Chandler Properties, L.C. v. Caldwell's Creek Homeowners Ass'n, Inc.*, 178 S.W.3d 384, 390 (Tex.App.–Fort Worth 2005, pet. denied).

We sustain a legal sufficiency challenge when the trial court's decision is unsupportable as a matter of law because (1) there is "a complete absence of evidence of a vital fact," (2) "the court is barred by rules of law or of evidence from giving weight to the only evidence offered to prove a vital fact," (3) there is "no more than a mere scintilla" of evidence proving a vital fact; or (4) the evidence conclusively establishes the opposite proposition of a plaintiff's proffered vital fact. *City of Keller v. Wilson*, 168 S.W.3d 802, 810 (Tex. 2005). We view evidence in the light most favorable to the ruling on a legal sufficiency challenge, indulging "every reasonable inference" in the trial court's favor. *El Paso Independent School Dist. v. Pabon*, 214 S.W.3d 37, 41 (Tex.App.--El Paso 2006, no pet.). "Any evidence of probative force supporting a finding requires us to uphold" the trial court's ruling. *ACS Investors, Inc. v. McLaughlin*, 943 S.W.2d 426, 430 (Tex. 1997). Where an outcome-determinative interpretation of evidence falls within the zone of reasonable disagreement, we are without jurisdiction to disturb the verdict or decision. *Khorshid, Inc. v. Christian*, 257 S.W.3d 748, 758 (Tex.App.--Dallas 2008, no pet.).

In a factual sufficiency challenge, we review the entire record in a neutral light and set

---

[4] In a third issue, the Marincasius argue in the alternative that any lien Drilling has on the Southlake Property is junior to their mortgagee's lien by virtue of equitable subrogation. Because we sustain Issues One and Two and find that Drilling's judgment lien never attached to the Southlake Property as a matter of law, we need not address the Marincasius' alternate argument presented in Issue Three.

aside the trial court's ruling only where it rests on evidence so weak or the finding is so contrary to the great weight and preponderance of the evidence that it shocks the conscience or is manifestly unjust. *Dow Chemical Co. v. Francis*, 46 S.W.3d 237, 242 (Tex. 2001); *El Paso Healthcare System, Ltd. v. Carmona*, 160 S.W.3d 267, 274 (Tex.App.--El Paso 2005, pet. granted, vacated pursuant to settlement). While the overlap between legal and factual sufficiency is substantial, a legally sufficient verdict may still be overturned as factually insufficient. *See In re Commitment of Myers*, 350 S.W.3d 122, 130 (Tex.App.--Beaumont 2011, pet. denied); *In re Estate of Russell*, 311 S.W.3d 528, 532 (Tex.App.--El Paso 2009, no pet.). Where an appellate court reverses a verdict or judgment on factual insufficiency grounds, it "must detail the evidence relevant to the issue and state in what regard the contrary evidence greatly outweighs the evidence in support of the verdict." *Francis*, 46 S.W.3d at 242 (internal citation and quotation marks omitted).

"When a legal sufficiency point is sustained, it is our duty to reverse and render." *Heritage Resources, Inc. v. Hill*, 104 S.W.3d 612, 619 (Tex.App.--El Paso 2003, no pet.). If a factual sufficiency "point is sustained on appeal, we must reverse and remand." *Id*. at 619. Where a party's prayer for relief is unclear or ambiguous as to the remedy sought, "it is the relevant appellate rule, and not the prayer for relief, that determines the disposition of the case." *Garza v. Cantu*, No. 14-11-00724-CV, 2013 WL 5451592, at *9 (Tex.App.--Houston [14th Dist.] Aug. 27, 2013, pet. denied), *citing Kaspar v. Thorne*, 755 S.W.2d 151, 157 (Tex.App.--Dallas 1988, no writ)(internal brackets and quotation marks omitted). "[T]he failure of a prayer for relief to request a particular disposition does not prevent an appellate court from granting such relief on a meritorious point of error which is clearly presented in an appellant's brief." *Id.*, *citing Olin Corp. v. Dyson*, 678 S.W.2d 650, 657 (Tex.App.--Houston [14th Dist.] 1984), *rev'd*

*on other grounds*, 692 S.W.2d 456 (Tex. 1985)(internal brackets and ellipses omitted).

## Waiver of Factual Sufficiency Challenge

At a threshold matter, Drilling contends that the Marincasius waived their factual sufficiency argument because they failed to challenge specific fact-findings by the trial court in their brief. We disagree.

"Unchallenged findings of fact are binding on an appellate court unless the contrary is established as a matter of law or there is no evidence to support the finding." *Rischon Development Corp. v. City of Keller*, 242 S.W.3d 161, 166 (Tex.App.--Fort Worth 2007, pet. denied)(reciting "no evidence" legal sufficiency standard). Here, the Marincasius challenged the trial court's fact-findings twice: first, in a motion for new trial in which they contested the sufficiency of trial court's finding that Greenlaw had abandoned his homestead; and again before this Court in their brief by which they challenged the trial court's "implicit[] finding that the Property did not qualify as homestead[.]" Although the Marincasius mischaracterize the trial court's finding of no homestead as implicit when the court made that finding explicitly, raising the point of error on appeal is more than enough to preserve error, place the fact-findings underpinning the judgment into dispute, and allow us to review factual sufficiency. *See Salaymeh v. Plaza Centro, L.L.C.*, 264 S.W.3d 431, 438 n.4 (Tex.App.--Houston [14th Dist.] 2008, no pet.)(challenge must be raised in point of error on appeal to be valid); *In re M.L.B.*, 269 S.W.3d 757, 761 (Tex.App.--Beaumont 2008, no pet.)(no motion for new trial required to preserve factual sufficiency challenge in bench trial). To the extent Drilling raises an inadequate briefing objection, we overrule it. Error was preserved, and the Marincasius' brief gave Drilling adequate notice of which cluster of fact-findings they intended to challenge. As such, we turn to the Marincasius' substantive claim that they are shielded from Drilling's judgment lien by

7

Greenlaw's use of the Southlake Property as his homestead at the time of sale.

*Homestead Exemption: Applicable Law*

The homestead exemption is a longstanding fixture of Texas law originally rooted in an 1839 Republic of Texas statute that was later constitutionalized upon the state's annexation. *Norris v. Thomas*, 215 S.W.3d 851, 855 (Tex. 2007); *see also* TEX.CONST. art. XVI, § 50 interp. commentary (West 1993)(noting the exemption's origin in Mexican and Spanish colonial law). The modern version of the exemption shields a family or single adult person's homestead from all but eight types of liens held by enumerated creditors. TEX.CONST. art. XVI, § 50(a). Any liens against a homestead that are not specifically listed in the Texas Constitution are void. *Dominguez v. Castaneda*, 163 S.W.3d 318, 330 (Tex.App.--El Paso 2005, pet. denied).

"Texas law is well settled that" a properly abstracted, unsecured judgment lien "cannot attach to a homestead as long as the property remains homestead." *Wilcox v. Marriott*, 103 S.W.3d 469, 473 (Tex.App.--San Antonio 2003, pet. denied). This protection extends to purchasers of a judgment debtor's homestead, who receive the property free and clear of any judgment lien. *Id.*; *Gill v. Quinn*, 613 S.W.2d 324, 325 (Tex.Civ.App.--Eastland 1981, no writ) ("[T]he exemption has been interpreted as allowing a judgment debtor to sell and dispose of the homestead without restraint."). "A subsequent purchaser of homestead property may assert the prior person[']s homestead protection against a prior lienholder so long as there is no gap between the time of homestead alienation and recordation of his title." *Dominguez*, 163 S.W.3d at 330. However, where a judgment debtor's homestead protection elapses prior to sale, the judgment creditor's abstracted lien may attach to the property by operation of law and be enforced against future owners of the property. *Wilcox*, 103 S.W.3d at 473.

We analyze homestead exemptions under a burden-shifting framework. *Dominguez*, 163

8

S.W.3d at 330. The judgment debtor and his assignees bear the initial burden of establishing homestead. *Dominguez*, 163 S.W.3d at 330. "To establish homestead rights, the claimant must show a combination of both overt acts of homestead usage and the intention on the part of the owner to claim the land as a homestead." *Id*. "Once property has been dedicated as homestead," the constitutional homestead privilege against unenumerated liens "is presumed to exist until its termination is proved[,]" and "the burden shifts to the [judgment] creditor" to prove termination "by abandonment, alienation, or death." *Wilcox*, 103 S.W.3d at 472 (internal citations and quotation marks omitted).

### *Impact of Divorce on Burden-Shifting Analysis*

In this case, the parties ask us to resolve the effect of divorce on the burden-shifting homestead protection analysis. The Marincasius contend that Greenlaw's ownership of the property and claim for a homestead exemption to his 2000 ad valorem property tax account brings the Southlake Property under the aegis of homestead protection and shifts the burden of disproving homestead to Drilling. We agree. While "mere ownership alone is insufficient to constitute premises of a homestead," *Dominguez*, 163 S.W.3d at 331, the ad valorem tax filings demonstrate that the Greenlaws not only owned the property, they intended to make it their homestead. *See* TEX.PROP.CODE ANN. § 41.005(e)(West 2000)(establishing that "property on which a person receives an exemption from taxation . . . is considered to have been designated as the person's homestead for purposes of this subchapter . . . ."). The Greenlaw divorce decree also shows that the family court characterized the property as the "family homestead" and granted an owelty lien—one of the few liens specifically authorized against the homestead by the Texas Constitution—in favor of Debra Greenlaw in light of the fact that Patrick Greenlaw now possessed the homestead.

9

Drilling maintains that even if the 2000 Greenlaw's homestead property tax exemption, the Texas Property Code, the Greenlaw's joint ownership of the home, and the divorce decree naming the home as a homestead constitute sufficient evidence to trigger the homestead presumption, the Marincasius still bear the burden of affirmatively re-proving the existence of a homestead under *Burk Royalty Co. v. Riley*, 475 S.W.2d 566 (Tex. 1972), because Greenlaw and his ex-wife were childless and "[t]he homestead of a family consisting only of husband and wife is terminated by divorce—irrespective of intention or occupancy." *Id*. at 568. "Since there [was] no family" after the Greenlaws' divorce, Drilling contends "there can be no homestead exemption" and his judgment lien attached as a matter of law. *Id*.; *accord Steitz v. Steitz*, 262 S.W.2d 262, 263 (Tex.Civ.App.--Dallas 1953, dism'd).

We note the premise underlying the cases Drilling cites has not been good law for four decades. *Burk Royalty* and *Steitz* were decided prior to 1973, when the Texas Constitution was amended to "extend[] the homestead protection to single adults." TEX.CONST. art. XVI, § 50 historical note (West Supp. 2013); *see* Act of June 16, 1973, H.J.R. 7, 63rd Leg., R.S., 1973 TEX.GEN.LAWS 2478 ("[p]roposing amendments to Article XVI, Section 50 . . . to include within the scope of homestead protection the real property of a single adult person which meets the other requirements of homestead property . . . ."). Thus, constitutional homestead protection is no longer conditioned upon the existence of a valid marriage or even a family. *See* TEX.CONST. art. XVI, § 50; *cf. Matter of Hill*, 972 F.2d 116, 120 (5th Cir. 1992)(noting that concurrent 1973 statutory amendments to the Texas Property Code "were intended to grant additional homestead rights to single adults")[Emphasis omitted]. Consequently,"[t]he homestead character of the property is not destroyed by a divorce if one of the parties to the divorce continues to maintain it as a homestead." *Wierzchula v. Wierzchula*, 623 S.W.2d 730, 732 (Tex.Civ.App.--Houston [1st

Dist.] 1981, no writ). Drilling's argument that the divorce created a *per se* gap in homestead protection because Greenlaw and his wife had no children is completely without merit.

We also dispatch Drilling's contention that divorce resets the burden-shifting framework, meaning the Marincasius would bear the burden of showing that Greenlaw affirmatively re-asserted homestead rights after the divorce. Drilling bases his argument entirely from language in a Texarkana Court of Appeals divorce case stating that "absent proof of its existence, a homestead cannot be presumed to continue after divorce." *Smith v. Smith*, 715 S.W.2d 154, 159 (Tex.App.--Texarkana 1986, no writ). The Texarkana Court of Appeals in turn cites *Burk Royalty* for that proposition. *Id.* We find *Smith* unpersuasive here for two reasons. First, *Smith* dealt with a wife's equitable reimbursement lien secured on her husband's home during the division of a marital estate in divorce proceedings, not a third-party creditor seeking to place a lien on the homestead. *Id.* at 158. Second, *Smith* premised its homestead presumption conclusion that homestead must be re-proven after divorce by paraphrasing obsolete dicta from *Burk Royalty*.[5] *Id.* at 159. Prior to 1973, courts would find automatic termination of homestead and thereby reset the burden-shifting framework upon the divorce of a childless couple because no family existed and the original Framers of Article XVI, section 50 intended to protect family units only. *Burk Royalty*, 475 S.W.2d at 568. As we stated before, that premise is no longer good law in light of intervening constitutional amendments extending the homestead right to single people. *See* TEX.CONST. art. XVI, § 50.

We decline to adopt *Smith*'s reasoning in cases where third-party judgment creditors seek liens on the property of a divorcing couple, particularly in light of this state's strong presumption against forfeiture of homestead. *See Caulley v. Caulley*, 806 S.W.2d 795, 797 (Tex. 1991).

---

[5] The actual holding of *Burk Royalty* was that a wife was estopped from claiming an Abilene property she received in a divorce as her homestead when her new husband, the head of her new family's household, already designated property in San Antonio as homestead.

11

"Once homestead rights are shown to exist in property, they are presumed to continue . . . ." *Caulley*, 806 S.W.2d at 797. The judgment creditor may certainly use divorce as a factor in disproving homestead. But since divorce does not automatically destroy homestead protection, *see Wierzchula,* 623 S.W.2d at 732, and the Texas Constitution has extended homestead protection to single adults, we hold that a judgment creditor bears the burden of proving abandonment where the debtor and assignees have established homestead, even in light of the debtor's intervening divorce. As such, Driller bore the burden of proof at trial. *Taylor*, 777 S.W.2d 568, 569 (Tex.App.--San Antonio 1989, no writ).

### *Abandonment of Homestead*

The trial court held that Driller met his burden and found that Greenlaw abandoned the Southlake Property prior to sale. Abandonment is a fact question reviewable for factual and legal sufficiency. *In re Estate of Cantu*, No. 04-11-00229-CV, 2012 WL 2336248, at *1 (Tex.App.--San Antonio 2012, no pet.)(mem. op.). To prove abandonment, the creditor must offer competent evidence that "clear[ly], conclusive[ly], and undeniabl[y]" shows "that the homestead claimant moved with the intention of not returning to the property." *Taylor*, 777 S.W.2d at 569; *see also Caulley*, 806 S.W.2d at 797 (evidence must be competent); *Florey v. Estate of McConnell*, 212 S.W.3d 439, 444 (Tex.App.--Austin 2006, pet. denied)(evidence "must be undeniably clear" and show "beyond almost the shadow[] [of] at least . . . all reasonable ground of dispute[] that there has been a total abandonment with an intention not to return and claim the exemption"); 43 TEX.JUR.3D *Homesteads* § 135 (2010). Changing residence alone is not enough to show abandonment of homestead. *Kendall Builders, Inc. v. Chesson*, 149 S.W.3d 796, 808 (Tex.App.--Austin 2004, pet. denied); *Farrington v. First Nat'l Bank of Bellville*, 753 S.W.2d 248, 251 (Tex.App.--Houston [1st Dist.] 1988, writ denied); *see also Morris v. Porter*,

393 S.W.2d 385, 390 (Tex.Civ.App.--Houston 1965, writ ref'd n.r.e.)(inability to reside at homestead due to health problems is insufficient to constitute abandonment as a matter of law). However, "[m]oving from one state to another may constitute some evidence tending to show abandonment of the homestead right, if it is shown that the newly acquired home was acquired or used with the intention of making it a homestead." *Kendall Builders, Inc.*, 149 S.W.3d at 808-09.

Drilling contends that Greenlaw's move to Colorado, when viewed in light of his divorce, his terminal cancer diagnosis, his "non-temporary" lease to the Marincasius, and his placement of the Southlake Property for sale, evinced Greenlaw's intent to permanently abandon the Southlake Property as his homestead. However, Drilling cites only to his own self-serving affidavit to show that Greenlaw moved to Colorado after his divorce, and Drilling failed to cite to any competent evidence in the record establishing that a lease ever existed or that Greenlaw suffered from terminal cancer at the time he moved to Colorado. We remind counsel of the duty under the Texas Rules of Appellate Procedure to cite the record. TEX.R.APP.P. 38.1(i); TEX.R.APP.P. 38.2 (incorporating Rule 38.1 against appellees). We also note that the trial court never made specific findings that a lease existed or that Greenlaw died of cancer, and while this Court is under no obligation to search through the record where a party fails to cite factual contentions, *Canton-Carter v. Baylor College of Medicine*, 271 S.W.3d 928, 931-32 (Tex.App.--Houston [14th Dist.] 2008, no pet.), we have failed to find any evidence of a lease or Greenlaw's health condition in our independent review of Drilling's affidavit and the attached exhibits constituting the trial record. As such, we exclude those facts from our analysis.

Instead, we must determine whether based only on Drilling's conclusory affidavit, in which he claims that Greenlaw moved to Colorado for an unspecified but "significant period of

13

time" after his divorce and prior to sale of the Southlake Property, constituted legally and factually sufficient evidence of abandonment. We hold that it did not.

Although the Marincasius stipulated to using the closed universe of evidence presented at summary judgment, including Drilling's affidavit, as bench trial evidence, Drilling's own sworn statement's comprised the entire nucleus of his abandonment claim. Further, the affidavit itself is conclusory and vague, without stating or explaining the basis of Drilling's knowledge of Greenlaw's move to Colorado. Drilling does not establish that he has personal knowledge of Greenlaw's intentions when he moved to Colorado, nor can he give a specific timeframe of non-residency between the divorce and sale beyond an imprecise guess. As such, Drilling has failed to raise more than a scintilla of evidence showing that Greenlaw intended to abandon the Southlake Property when he relocated to Colorado.[6] Even if we were to accept that the evidence was legally sufficient, Drilling's self-serving bald statement that Greenlaw had relocated to Colorado is simply too vague to support the factual sufficiency of the trial court's abandonment finding. *See In re Estate of Russell*, 311 S.W.3d at 532. The constitutional homestead protection is strong, and stripping away that protection based only on a creditor's affidavit stating that a homeowner has left the state for a "significant" period of time would shock the conscience and be manifestly unjust.

Issues One and Two are sustained. We note that the remedies for legal and factual sufficiency are conflicting. Because the Marincasius requested reversal and rendition in their prayer, and because we find that the evidence is legally insufficient, we reverse the trial court and render judgment in favor of the Marincasius.

---

[6] We note that certain language in *Kendall Builders* suggests that homestead abandonment may be presumed upon a homeowner's departure from the state in the "absence of acts evidencing an intention to return[.]" *Kendall Builders, Inc.*, 149 S.W.3d at 809. We have serious reservations about adopting such a rule, believing that it improperly shifts the burden away from creditors and could place many homeowners at risk of improper lien attachment upon their departure from the state of Texas. As such, we decline to adopt that portion of *Kendall Builders* in this opinion.

14

April 9, 2014

YVONNE T. RODRIGUEZ, Justice

Before McClure, C.J., Rivera, and Rodriguez, JJ.