COURT OF APPEALS
EIGHTH DISTRICT OF TEXAS
EL PASO, TEXAS



| | | |
|---|---|---|
| ROSARIO CARTWRIGHT and ISHMAEL CARTWRIGHT, | § | No. 08-16-00129-CV |
| | § | |
| Appellants, | § | Appeal from the |
| | § | |
| v. | § | 143rd District Court |
| | § | |
| FAVIOLA ARACELI ARMENDARIZ, | § | of Ward County, Texas |
| | § | |
| Appellee. | § | (TC# 14-09-23446-CVW) |

## **O P I N I O N**

In this automobile accident case, Appellants Rosario and Ishmael Cartwright contend that the jury's take-nothing verdict against them was improper both because the verdict rested on legally and factually insufficient evidence, and because the trial court erred by preventing the jury from hearing evidence that the defendant driver received a traffic ticket for failing to stop at a stop sign immediately before the crash. The Cartwrights also maintain the trial court improperly excluded certain medical records.

We reverse and remand for a new trial.

**BACKGROUND**

The collision in this case occurred in Dawson County on August 23, 2013.[1] The defendant, Faviola Araceli Armendariz, was the driver of a vehicle in which Ishmael Cartwright[2] was a passenger. Armendariz, called as an adverse witness by the plaintiffs, testified that she was driving Cartwright and her cousin Humberto from Monahans to Lubbock to go shopping for school clothes. Along the way, Armendariz stopped in Midland to pick up her friend Stephanie Mendoza and Mendoza's baby. Cartwright was seated in the back of the vehicle on the right-hand side, and Mendoza and her baby were seated in the back on the left-hand side. Armendariz had no memory of the collision. She testified that her last memory before waking up in an ambulance on the way to the hospital was missing a turn on the road to Lamesa that went to Lubbock. She did not remember if she ran a stop sign or was using her cell phone at the time. Mendoza and her baby died in the accident. Armendariz suffered bruises and a strained muscle in her hip. According to Armendariz, Humberto suffered scratches on his arm. To Armendariz's knowledge, everybody in the car suffered injuries. On cross-examination, she testified that she did not mean to hurt Cartwright and that she was in counseling relating to the accident.

Rosario Cartwright testified as to her emotional reaction to the accident and the extent of her son Ishmael's injuries. She explained that she and Ishmael were originally going to go on a trip to Port Aransas, but Ishmael wanted to go with Humberto to Lubbock, so she allowed him to go to Lubbock while she went to Port Aransas. She testified that she had been out on a deep-sea fishing boat with her cell phone in her vehicle on land and did not learn that Ishmael had been

---

[1] Dawson County sits outside the geographic limits of this court of appeals district. *See* TEX.GOV'T CODE ANN. 22.201(*l*)(identifying the Eleventh Court of Appeals district as encompassing Dawson County). However, this case was tried in district court in Ward County, which is within the Eighth Court of Appeals District. *See* TEX.GOV'T CODE ANN. 22.201(i)(setting out counties in the Eighth Court of Appeals District). Because we are required to hear appeals from cases tried in Ward County, and because there is no complaint about Ward County being an improper venue lodged before this Court, we take appeal to this Court to be proper.

[2] At the time suit was filed, Ishmael Cartwright was a minor, so his mother Rosario filed suit both in her own right and on his behalf. Ishmael reached the age of majority before trial, so he became a party in his own right. His mother remained a party to this suit in her own right as well.

flown to a hospital in Lubbock until after she had returned from fishing late in the evening. She left for Lubbock the next morning and met him at University Medical Center.

Ishmael stayed in the hospital for eight days. Rosario testified that her son had a fractured pelvis, a punctured lung, a bleeding kidney, a liver issue, and stitches on his foot because he was ejected from the back of the vehicle through a window. She testified that Ishmael was unable to take care of himself for a period of time, and that she had to miss work at her job at a convenience store because he could not stand or sit up on his own and she had to help him get in and out of the shower. According to Rosario, Ishmael forced himself to start getting up in late October and attended school in a wheelchair before using crutches and eventually learning how to stand up on his own and start taking care of himself by the end of October or beginning of November. She testified that after the accident, Ishmael had changed, becoming "depressing, angry, being impatient" and that he would get "nervous" and start to panic "if vehicles start like hitting the brakes or they're speeding and they suddenly start moving fast[.]" Rosario stated that she was responsible for Ishmael's medical bills because he was a minor at the time. She testified the helicopter flight to the hospital cost almost $26,000 and the bills from UMC were almost $67,000, not counting other miscellaneous bills from different doctors and surgeons.

On cross-examination, Rosario testified that she had a hard time getting Ishmael to go to the doctor, and that he refused physical therapy because they did not have Medicaid or any kind of insurance. She also testified that his liver injury healed, and a statement she made at deposition that Ishmael had broken only one rib on the left side was read to the jury. She also admitted that a health care provider had stated that Ishmael's hip was okay, although she maintained that he still had trouble with it. She also testified that Ishmael has fainting spells where he blacks out. Since the accident, Ishmael and his girlfriend had a baby. Following Ishmael's accident, Rosario sued

3

her new employer after she suffered an on-the-job injury, and Rosario admitted that this also affected the family's ability to get back on their feet financially.

Ishmael Cartwright testified that he was sixteen at the time of the accident. He was not employed at the time of the accident nor at the time of trial. He testified that his friend Humberto had invited him to go back-to-school shopping in Lubbock. Once they picked up Stephanie in Midland, the driver took a route that Ishmael was unfamiliar with, although he had traveled to Lubbock before. Ishmael testified that no one in the car was using a phone to use Google Maps or anything similar. He further testified that Armendariz missed the turn to Lubbock, and that once they had returned to the road they needed to be on, Armendariz ran a stop sign, which caused the accident. He stated that Armendariz was using her phone at the time, but that he could not tell what she was doing. He saw the stop sign go past and then saw a car coming from the right side before the collision. He was not wearing a seat belt because his seat belt in the car did not work, which he said he told Armendariz; she acknowledged that it was broken. He had one headphone in and was listening to music on his phone immediately before the collision. He did not remember the moment of impact, but he did remember being on the side of the road after the impact and being taken into the helicopter.

With respect to his injuries, Ishmael testified that he had broken all his ribs, which caused a hole in his lung. He also had a fractured pelvis, internal bleeding, and stitches or staples on his foot. He could not walk for two or three weeks and he was in pain. He agreed with his mother's testimony that he was unable to take care of his own basic needs until late October or early November. He testified that after the accident he would feel worn out and tired more easily, as well as tightness when the weather changes. He also felt depressed and angry. He stated that he knew how to drive but did not have a driver's license or drive himself because of the accident.

4

On cross-examination, Ishmael agreed that in early October when he had a follow-up appointment with a doctor, he had stopped using his crutches even though he was supposed to be using them. He admitted that at deposition he stated that his doctor did not believe the blackouts were related to the accident. He testified that he will drive short distances but if he is on a highway or big trucks are on the road, he felt apprehensive.

At the close of the plaintiffs' case-in-chief, the Cartwrights moved for admission of medical billing records, which the trial court admitted in part and excluded in part. The defendant did not call any witnesses.

The jury returned a take-nothing verdict, finding that Armendariz was not negligent. This appeal followed.

## DISCUSSION

The Cartwrights raise complaints related to the sufficiency of the trial evidence and the purportedly erroneous exclusion of certain evidence. We will begin with sufficiency.

### *Standard of Review*

In Issue One, the Cartwrights raise both legal and factually sufficiency challenges to the verdict.

"When a party attacks the legal sufficiency of an adverse finding on an issue on which she has the burden of proof, she must demonstrate on appeal that the evidence establishes, as a matter of law, all vital facts in support of the issue." *Dow Chemical Co v. Francis*, 46 S.W.3d 237, 241 (Tex. 2001). "In reviewing a 'matter of law' challenge, the reviewing court must first examine the record for evidence that supports the finding, while ignoring all evidence to the contrary." *Id*. "If there is no evidence to support the finding, the reviewing court will then examine the entire record to determine if the contrary proposition is established as a matter of law." *Id*. "The point of error

5

should be sustained only if the contrary proposition is conclusively established." *Id*. The jury is the sole judge of credibility and demeanor, but the "jury's decisions regarding credibility must be reasonable." *City of Keller v. Wilson*, 168 S.W.3d 802, 820 (Tex. 2005). "Jurors cannot ignore undisputed testimony that is clear, positive, direct, otherwise credible, free from contradictions and inconsistencies, and could have been readily controverted." *Id*. at 820. Where the challenging party conclusively proves he has established the point as a matter of law, the appropriate remedy is reversal and rendition of judgment. *Marincasiu v. Drilling*, 441 S.W.3d 551, 557 (Tex.App.— El Paso 2014, pet denied).

A jury verdict that rests on legally sufficiency evidence may nevertheless be defective on factual sufficiency grounds. When a party that bore the burden of proof on an issue challenges a fact finder's negative finding on that issue under the factual sufficiency standard, he must demonstrate that the adverse finding is against the great weight and preponderance of the evidence. *Dow Chem. Co.*, 46 S.W.3d at 242. In entertaining a factual sufficiency challenge, we must consider and weigh all evidence in the record, and we can set aside a verdict only if the evidence supporting the adverse finding is so weak or the finding is so against the great weight and preponderance of the evidence that it is clearly wrong or unjust. *Id.*; *see also Golden Eagle Archery, Inc. v. Jackson*, 116 S.W.3d 757, 761 (Tex. 2003)(noting that courts overturning verdicts on factual insufficiency grounds must explain why evidentiary discrepancy is "manifestly unjust; why it shocks the conscience; or clearly demonstrates bias"). The courts of appeals may not reverse a verdict "merely because they conclude that the evidence preponderates toward an affirmative answer[;]" rather, reversal is only warranted when a detailed review of the evidence "indicates that the great weight of that evidence supports an affirmative answer." *Herbert v. Herbert*, 754 S.W.2d 141, 144 (Tex. 1988). We walk a fine line on factual sufficiency review,

6

mindful both of our duty not to merely substitute our judgment for that of the jury while at the same time recognizing that our strong deference to a jury's verdict does not make that verdict totally unreviewable. *Golden Eagle Archery, Inc.*, 116 S.W.3d at 761. Before reversing on factual sufficiency grounds, this Court is obligated to detail the relevant evidence and "state in what regard the contrary evidence greatly outweighs the evidence in support of the verdict." *Dow Chem. Co.*, 46 S.W.3d at 242. The proper remedy when a verdict is factually insufficient is reversal and remand for a new trial. *Sw. Bell Tel. Co. v. Garza*, 164 S.W.3d 607, 626 (Tex. 2004).

### *Analysis*

In many sufficiency cases, he-said she-said-type conflicts in evidence fall within the purview of the jury, meaning that appellate reversal is rare when resolving an evidentiary conflict that hinges on an assessment of credibility and demeanor. In this case, however, we do not have conflicting testimony per se. Rather, Ishmael Cartwright testified that he saw Armendariz using her cell phone and running a stop sign immediately before the accident. Armendariz testified as an adverse witness that she did not remember whether she was using her cell phone or whether she ran the stop sign before the accident.

These two lines of testimony form the entirety of record regarding causation. Cartwright did not put on any other eyewitness or expert evidence regarding the crash, and Armendariz did not put on an affirmative case at all. The question before us is whether the jury was free to disregard Cartwright's testimony about what caused the crash, given that Armendariz never put on any conflicting evidence herself and could not remember if she was the cause of the crash.

Armendariz, drawing a negative inference from the statement in *City of Keller* that jurors "cannot ignore undisputed testimony that is clear, positive, direct, otherwise credible, free from contradictions and inconsistencies, and could have been readily controverted[,]" maintains that

7

Ishmael's testimony could not establish negligence as a matter of law under the legal sufficiency standard because Ishmael contradicted himself during his testimony, and because Ishmael had credibility issues.

Armendariz's primary point is that it was unclear from Ishmael's testimony whether he actually saw her run a stop sign. Ishmael testified that he looked up from his phone after the vehicle he was riding in had passed the stop sign, and his mother confirmed that he had told him he had pulled his phone out of his pocket and looked up when the accident occurred. Armendariz contends this evidence casts doubt on Ishmael's recollection of events.

Further, with respect to Ishmael's credibility as a witness, Armendariz maintains that:

- Ishmael testified that he gets nervous when he rides in cars, but the jury heard him testify he drove a car despite not having a driver's license.

- Ishmael testified he was not wearing a seat belt because the seat belt did not work, but a notation in medical records stated that Ishmael was restrained in the back seat.

- Ishmael testified that he did not miss any follow-up appointments with his doctors, but medical records and his mother's testimony established that he did, in fact, miss follow-up appointments.[3]

While we agree that the Cartwrights cannot establish Armendariz's negligence as a matter of law given these ostensible contradictions, inconsistencies, and credibility issues with Ishmael's testimony, the Cartwrights also raise a factual sufficiency challenge, contending that the jury's no-negligence finding goes against the great weight and preponderance of the evidence. On this front, we agree with the Cartwrights.

Before reversing on factual sufficiency grounds, we must explain our opinion why we have "concluded that a reasonable factfinder could not have credited disputed evidence in favor of the

---

[3] Armendariz also asserts that Rosario Cartwright's credibility as a witness was impeached by her inability to remember how many of her son's ribs were broken and her reasons for being unable to go back to work. Because Rosario Cartwright was not a witness to the crash, her testimony is irrelevant in our consideration of causation.

8

finding." [Internal quotation marks omitted]. *In re J.O.A.*, 283 S.W.3d 336, 345 (Tex. 2009). Here, there is no disputed evidence to credit. Even though the record in this case is sparse and hinges almost entirely on weighing testimony from both the plaintiff and the defendant, as we stated before, Armendariz never actually contradicts Ishmael's testimony; she never put on a case at all. While inconsistencies in Ishmael's testimony or concerns about credibility may interpose a bar against granting judgment on legal sufficiency grounds, none of those inconsistencies or credibility issues went to the heart of the causation issue. It is true that the Cartwrights could have theoretically put on more evidence of causation during their case-in-chief to bolster their claim. But that line of logic cuts both ways. While more evidence from the plaintiff could have been helpful, Ishmael's testimony alone created a fact question, one that went unanswered when Armendariz testified that she did not remember the accident and then chose not to put on any affirmative contradictory evidence. And since it was not apparent how Armendariz's cross-examination of Ishmael' shifted the case's center of gravity away from the failure to stop/texting while driving scenario that Ishmael claimed to have witnessed, we find ourselves with a record that lean distinctly more towards the Cartwrights—so much so that reversal is warranted.

Considering all the evidence in the record before us, we conclude that the jury's verdict was contrary to the great weight and preponderance of the evidence. Issue One is sustained in part as to factual sufficiency. We need not address Issues Two or Three, as they are unnecessary to the resolution of this appeal.

We reverse and remand for a new trial.

May 8, 2019
                                           YVONNE T. RODRIGUEZ, Justice

Before McClure, C.J., Rodriguez, and Palafox, JJ.

9