

# Fourth Court of Appeals
## San Antonio, Texas

### MEMORANDUM OPINION

No. 04-20-00151-CV

John **PORTERFIELD**,
Appellant

v.

**DEUTSCHE BANK NATIONAL TRUST COMPANY**,
Appellee

From the 451st Judicial District Court, Kendall County, Texas
Trial Court No. 18-366
Honorable Kirsten Cohoon, Judge Presiding

**OPINION ON MOTION FOR REHEARING**

Opinion by:    Beth Watkins, Justice

Sitting:    Patricia O. Alvarez, Justice
    Irene Rios, Justice
    Beth Watkins, Justice

Delivered and Filed: October 27, 2021

AFFIRMED IN PART; REVERSED AND REMANDED IN PART

Appellant John Porterfield appeals the trial court's summary judgment in favor of appellee

Deutsche Bank National Trust Company. On July 14, 2021, this court issued an opinion and

judgment affirming the trial court's judgment in part and reversing it in part. Both parties sought

rehearing from that opinion, and Deutsche Bank sought reconsideration en banc. After

consideration, we deny both parties' motions for panel rehearing, withdraw our July 14, 2021

opinion and judgment, and substitute this opinion and judgment in their place. We affirm the trial

court's judgment in part, reverse it in part, and remand the case for further proceedings consistent with this opinion. Because we have issued a new panel opinion, Deutsche Bank's request for en banc reconsideration is denied as moot. *See* TEX. R. APP. P. 49.4.

## BACKGROUND

This appeal arises out of a long-running dispute between these parties regarding their competing claims to residential property in Kendall County, Texas. From 1996 until 2005, the property belonged to a non-party, Timothy Nobles, who used it as his homestead until at least August of 2005. In 2005, one of Nobles's creditors, Warren Power and Machinery, obtained a judgment against him. WPM did not execute its judgment at that time, but it filed an abstract of judgment in the Kendall County real property records on April 11, 2005. The abstract of judgment was indexed under the property's address.

At some point after Hurricane Katrina hit New Orleans in 2005, Nobles moved out of Texas. Nobles never lived in the property again after that point. He died in 2007.

Prior to his death, Nobles sold the property to Jon Galland in November of 2005. To finance the purchase, Galland obtained a mortgage from Long Beach Mortgage Company, which was secured by a deed of trust filed in the Kendall County real property records on November 30, 2005 ("the Galland note"). In 2007, Porterfield and his wife obtained a judgment against Galland awarding the property to them. That same year, the servicer of Galland's mortgage loan accelerated the Galland note and sent it for foreclosure. On September 24, 2007, an Assignment of Lien assigning the Galland note to Deutsche Bank was filed in the Kendall County real property records.

The Porterfields sued Deutsche Bank, contending it had not provided them with the payoff amounts necessary to satisfy the Galland note and clear their title to the property. In September of 2011, the Porterfields and Deutsche Bank entered into a mediated settlement agreement in which the Porterfields agreed to pay $120,000 to settle the Galland note. The Porterfields agreed that if

they did not pay that amount by a specified deadline, they would vacate the property and would not contest Deutsche Bank's attempts to foreclose on the Galland note. The Porterfields did not pay by the deadline, so Deutsche Bank foreclosed on the Galland note and purchased the property at auction. Deutsche Bank filed its Substitute Trustee's Deed in the Kendall County real property records on August 13, 2012.

The Porterfields then sued Deutsche Bank again, this time to overturn the foreclosure sale. Deutsche Bank removed the suit to federal court and filed a counterclaim for breach of the mediated settlement agreement. On March 10, 2015, the Western District of Texas concluded the Porterfields breached the mediated settlement agreement by contesting the foreclosure and failing to vacate the property. That court issued a memorandum and order granting summary judgment for Deutsche Bank on its counterclaim and providing, "[a]ll of the Porterfields' claims have now been dismissed from this lawsuit."

On July 30, 2015, WPM assigned its abstracted, but still unexecuted, 2005 judgment against Nobles to Porterfield. On August 25, 2015, a Midland County court issued a writ of execution against Nobles. The Kendall County constable executed the writ by selling the property to Porterfield at public auction. Porterfield filed his resulting Deed Under Execution in the Kendall County real property records on November 13, 2015.

In July of 2018, Deutsche Bank filed this trespass to try title and quiet title action against Porterfield. Porterfield filed a general denial and several affirmative defenses to those claims. He contended in the alternative that if Deutsche Bank prevailed, he "should be allowed to remove the improvements" he had made to the property "or be compensated for same." He also asserted counterclaims for abuse of judicial process, abuse of process, false imprisonment, civil conspiracy, and tortious interference.

Deutsche Bank filed a motion for partial summary judgment on Porterfield's tort counterclaims and its own trespass to try title and quiet title actions. In support of its own claims, Deutsche Bank argued Porterfield's Deed Under Execution was void and, as a result, its title to the property was superior to Porterfield's as a matter of law. Porterfield filed a competing traditional and no-evidence motion for summary judgment on the issues Deutsche Bank raised in support of its trespass to try title and quiet title claims. In addition, he argued that as a matter of law, Nobles abandoned the property as his homestead when he left Texas and WPM's abstract of judgment attached to the property as a lien at that point. Porterfield argued that once that lien attached, every subsequent conveyance of the property—including the November 2005 sale to Galland and the Galland note on which Deutsche Bank eventually foreclosed—was made subject to it. Because Porterfield's Deed Under Execution arose out of that purported lien, he argued his title was superior to Deutsche Bank's.

On November 21, 2019, the trial court signed an "Order and Final Judgment" granting Deutsche Bank's Motion for Partial Summary Judgment and denying Porterfield's motion. The trial court ordered that title to the property was "quieted and vested in" Deutsche Bank and specified "that any right, title, or interest claimed by or through [Porterfield] is denied, dissolved, and removed as a cloud on [Deutsche Bank's] title to the property," including Porterfield's claimed interests under the Deed Under Execution. The court decreed that its order was "a final order that resolves all claims among all parties, and any relief not expressly granted is denied."

Porterfield filed a motion for new trial arguing, inter alia, that the trial court could not properly grant summary judgment for Deutsche Bank on the homestead issue and that "there has been no adjudication" on his claim for improvements. After the trial court overruled Porterfield's motion for new trial by operation of law, he filed this appeal.

ANALYSIS

In three issues, Porterfield argues the trial court erred by: (1) granting Deutsche Bank's motion for summary judgment and denying his competing motion on Deutsche Bank's trespass to try title and quiet title actions; (2) granting Deutsche Bank's motion for summary judgment on Porterfield's tort counterclaims; and (3) granting Deutsche Bank more relief than it requested by rendering judgment on Porterfield's claim for improvements.

### *Jurisdiction*

We note as a threshold matter that Deutsche Bank filed a partial motion for summary judgment. Because Porterfield argues that motion did not address his claim for improvements, we must determine whether the trial court's judgment granting that motion is final or interlocutory. *See M.O. Dental Lab v. Rape*, 139 S.W.3d 671, 673 (Tex. 2004).

"[A]n order can be final and appealable when it should not be." *Lehmann v. Har-Con Corp.*, 39 S.W.3d 191, 204 (Tex. 2001). An order that grants more relief than a party requested may be reversible, but it is not necessarily interlocutory. *Id.* Generally, a judgment is final if it either "actually disposes of all claims and parties then before the court, regardless of its language" or states with unmistakable clarity that it does so. *Id.* at 192–93. Here, the trial court's judgment states it "is a final order that resolves all claims among all parties, and any relief not expressly granted is denied." This language disposes of all of the parties' claims, including Porterfield's claim for improvements, even if that disposition granted Deutsche Bank more relief than its motion requested. *See id.* As a result, the judgment is final and appealable. *See id.*

### *Summary Judgment Standard of Review*

Both parties sought traditional summary judgment on Deutsche Bank's trespass to try title and quiet title actions. Deutsche Bank also sought, and the trial court granted, traditional summary judgment on Porterfield's tort counterclaims. To be entitled to a traditional summary judgment,

the movant must show there are no genuine issues as to any material facts and the movant is therefore entitled to judgment as a matter of law. TEX. R. CIV. P. 166a(c); *Lightning Oil Co. v. Anadarko E&P Onshore, LLC*, 520 S.W.3d 39, 45 (Tex. 2017). A plaintiff is entitled to traditional summary judgment on its own affirmative claim if it conclusively proves all essential elements of that claim. *Compass Bank v. Durant*, 516 S.W.3d 557, 565 (Tex. App.—Fort Worth 2017, pet. denied). Conversely, "[a] defendant who conclusively negates at least one of the essential elements of a cause of action or conclusively establishes an affirmative defense is entitled to [traditional] summary judgment." *Frost Nat'l Bank v. Fernandez*, 315 S.W.3d 494, 508 (Tex. 2010). We consider the evidence in the light most favorable to the respondent and indulge every reasonable inference in its favor. *Lightning Oil*, 520 S.W.3d at 45.

Porterfield also sought, and the trial court denied, a no-evidence summary judgment on Deutsche Bank's trespass to try title and quiet title claims. "Although the denial of summary judgment is normally not appealable, we may review such a denial when both parties moved for summary judgment and the trial court granted one and denied the other." *Tex. Mun. Power Agency v. Pub. Util. Comm'n of Tex.*, 253 S.W.3d 184, 192 (Tex. 2007). To be entitled to no-evidence summary judgment, Porterfield was required to identify specific elements of Deutsche Bank's claims that he contended were supported by no evidence. TEX. R. CIV. P. 166a(i). A no-evidence point will only be sustained if: "(a) there is a complete absence of evidence of a vital fact, (b) the court is barred by rules of law or of evidence from giving weight to the only evidence offered to prove a vital fact, (c) the evidence offered to prove a vital fact is no more than a mere scintilla, or (d) the evidence conclusively establishes the opposite of the vital fact." *King Ranch, Inc. v. Chapman*, 118 S.W.3d 742, 751 (Tex. 2003) (internal quotation marks omitted). "Less than a scintilla of evidence exists when the evidence is so weak as to do no more than create a mere surmise or suspicion of a fact." *Id.* (internal quotation marks omitted).

When both sides move for summary judgment on the same issue and the trial court grants one motion and denies the other, we review all the summary judgment evidence, determine all questions presented, and render the judgment the trial court should have rendered. *Tex. Mut. Ins. Co. v. PHI Air Med., LLC*, 610 S.W.3d 839, 846 (Tex. 2020).

### Deutsche Bank's Trespass to Try Title and Quiet Title Claims

*Applicable Law*

Generally, a trespass to try title claim is the exclusive method to determine title to real property in Texas. TEX. PROP. CODE ANN. § 22.001; *Tex. Parks & Wildlife Dep't v. Sawyer Tr.*, 354 S.W.3d 384, 389 (Tex. 2011). To prevail on a trespass to try title action, a plaintiff must establish: (1) a regular chain of conveyances from the sovereign to the plaintiff; (2) a superior title to that of the defendant arising out of a common source; (3) title by adverse possession; or (4) prior possession that has not been abandoned. *Rogers v. Ricane Enters., Inc.*, 884 S.W.2d 763, 768 (Tex. 1994).

A suit to quiet title seeks to remove an encumbrance on the claimant's title and, if successful, renders that encumbrance invalid or ineffective. *Dauz v. Valdez*, 571 S.W.3d 795, 812 (Tex. App.—Houston [1st Dist.] 2018, no pet.). To quiet title, the claimant must establish: (1) an interest in the property in question; (2) its title to the property is affected by a claim by the defendant; and (3) defendant's claim, though facially valid, is invalid or unenforceable. *Semmler v. Lander*, No. 04-18-00413-CV, 2019 WL 938304, at *3 (Tex. App.—San Antonio Feb. 27, 2019, no pet.) (mem. op.).

*Application*

*Did Deutsche Bank Show It Was Entitled to Judgment on Its Claims?*

In its motion for summary judgment, Deutsche Bank argued its title to the property was superior because Porterfield's Deed Under Execution—which arose out of WPM's abstract of

judgment—is void for two reasons. First, Deutsche Bank argued that after Nobles died in 2007, WPM's abstract of judgment could only be executed through the administration of Nobles's estate, not through a foreclosure sale of the property. Second, it argued that by the time Porterfield acquired WPM's abstract of judgment in 2015, Nobles no longer had any interest in the property upon which Porterfield could execute that judgment. In response, Porterfield argued that neither Nobles's death nor his 2005 sale of the property to Galland affected Porterfield's right to execute WPM's abstract of judgment against the property.

Assuming, without deciding, that the property ceased to be Nobles's homestead at some point before he sold it—an issue we address more fully below—we agree with Porterfield. Deutsche Bank's argument on these points assumes WPM's abstract of judgment operated solely against Nobles personally, rather than against the property. However, the Texas Property Code provides that an abstract of judgment recorded and indexed in the county where the judgment debtor owns non-exempt property constitutes a lien on that property. TEX. PROP. CODE ANN. § 52.001; *Woodward v. Jaster*, 933 S.W.2d 777, 780–81 (Tex. App.—Austin 1996, no writ); *see also Nichols v. Cansler*, 140 S.W.2d 254, 255 (Tex. App.—Fort Worth 1940, writ dism'd) (describing an action "to foreclose a statutory judgment lien on land already fixed in accordance with statutory requirements" as "an action in rem"). "The purpose of an abstract of judgment is to create a lien against the debtor's property and to provide notice to subsequent purchasers and encumbrancers of the existence of the judgment and the lien." *Wilson v. Dvorak*, 228 S.W.3d 228, 233 (Tex. App.—San Antonio 2007, pet. denied). A properly recorded and indexed abstract of judgment "creates a judgment lien that is superior to the rights of subsequent purchasers and lienholders." *Hoffman, McBryde & Co., P.C. v. Heyland*, 74 S.W.3d 906, 909 (Tex. App.—Dallas 2002, pet. denied).

As a result, when a lien arising out of an abstract of judgment attaches to a judgment debtor's non-exempt property, the property is then encumbered by that lien. TEX. PROP. CODE § 52.001. Unless the underlying judgment is allowed to become dormant,[1] that lien will remain attached to the property even if the judgment debtor dies or subsequently conveys the property. *See Gordon v. W. Hous. Trees, Ltd.*, 352 S.W.3d 32, 39 (Tex. App.—Houston [1st Dist.] 2011, no pet.) ("[I]f a judgment lien is properly attached to property, a subsequent purchaser of the property purchases it subject to the judgment lien."); *Horton v. Gibson*, 274 S.W. 292, 293 (Tex. App.—Waco 1925, no writ) ("[T]he proper recording and indexing of an abstract of said judgment, if recorded before the death of [the judgment debtor], would create a lien on the house and lot in question, provided it was not exempt as homestead.").

Here, Deutsche Bank's own summary judgment evidence shows WPM filed an abstract of judgment against Nobles in the Kendall County property records on April 11, 2005, during Nobles's lifetime and while he still owned the property. It is undisputed that Porterfield later acquired WPM's rights under that abstract. Deutsche Bank did not argue the abstract was in any way defective so as to deprive the public of notice of WPM's potential claim against the property. *See Wilson*, 228 S.W.3d at 234–36 (abstract of judgment that did not satisfy statutory requirements "did not create an enforceable judgment lien"); *see also Austin v. Coface Seguro de Credito Mexico, S.A. de C.V.*, 506 S.W.3d 707, 712 (Tex. App.—Houston [1st Dist.] 2016, pet. denied) ("[A] purchaser is charged with knowledge of every recital, reference, and reservation that appears within the chain of title.") (internal quotation marks omitted). As a result, upon its filing, that

---

[1] "If a writ of execution is not issued within 10 years after the rendition of a judgment of a court of record or a justice court, the judgment is dormant and execution may not be issued on the judgment unless it is revived." TEX. CIV. PRAC. & REM. CODE ANN. § 34.001(a). Here, it is undisputed that while WPM did not execute its judgment against Nobles within ten years of rendition, it timely revived that judgment.

abstract constituted a lien on and attached to Nobles's non-exempt property in Kendall County as a matter of law. TEX. PROP. CODE § 52.001.

Deutsche Bank relies on Texas Rule of Civil Procedure 625 to argue that Porterfield's execution of WPM's abstract of judgment was invalid because it did not occur before Nobles's death. Rule 625 provides, "If a sole defendant dies after judgment for money against him, execution shall not issue thereon, but the judgment may be proved up and paid in due course of administration." TEX. R. CIV. P. 625. Deutsche Bank argues this rule means that once Nobles died, WPM's abstract of judgment could only be executed as part of the administration of Nobles's estate, rather than through a foreclosure of the property. As support for this proposition, Deutsche Bank relies on authority holding that under Rule 625, "[a] sale under execution issued after the death of the judgment debtor, he having been alive at the time the judgment was rendered, is void in the sense that it is inoperative to pass title." *First Nat'l Bank of Bowie v. Cone*, 170 S.W.2d 782, 783 (Tex. App.—Fort Worth 1943, writ ref'd); *see also Conkrite v. Hart & Co.*, 10 Tex. 140, 142 (1853); *Leonard v. Veazey*, 242 S.W.2d 646, 647 (Tex. App.—El Paso 1951, writ ref'd); *Harm v. Ehlers*, 179 S.W.2d 582, 583 (Tex. App.—Austin 1944, writ ref'd); *Grisson v. F.W. Heitmann Co.*, 130 S.W.2d 1054, 1057 (Tex. App.—Galveston 1939, writ ref'd); *Lippincott v. Taylor*, 135 S.W. 1070, 1071 (Tex. App.—Fort Worth 1911, writ ref'd); *Fleming v. Ball*, 60 S.W. 985, 986 (Tex. App.—Texarkana 1901, writ ref'd).

There are at least two problems with Deutsche Bank's reliance on this line of cases. First, the authority upon which Deutsche Bank relies holds that under Rule 625, the judgment debtor's death deprives an abstract of judgment of its "lien acquiring vitality." *See, e.g.*, *Harms*, 179 S.W.2d at 583; *see also Cone*, 170 S.W.2d at 783 ("It seems to us that the status of the claim, whether secured or unsecured, becomes fixed at the time of the death of the judgment debtor."). As explained above, however, because Deutsche Bank has not disputed that the abstract of judgment

at issue here was properly filed in accordance with section 52.001 of the Property Code, that abstract did not have mere "lien acquiring vitality"; instead, by operation of section 52.001, it became an enforceable lien against the property itself unless the property was Nobles's homestead. *See* TEX. PROP. CODE § 52.001; *see also Nichols*, 140 S.W.2d at 255. We are bound by the Legislature's determination that such an abstract is distinguishable from a mere money judgment, and the authority upon which Deutsche Bank relies—authority that predates the enactment of section 52.001—does not compel a different conclusion. *See Flournoy Drilling Co. v. Walker*, 750 S.W.2d 911, 912 (Tex. App.—Corpus Christi–Edinburg 1988, writ denied) ("[T]here is good reason to treat a statutory lien differently than a money judgment.").

Second, Deutsche Bank's cited authority indicates that Rule 625 protects the "undivided interest of the property *belonging to the estate of*" the judgment debtor from execution so as not to "interrupt the orderly administration of the deceased's estate." *Long v. Castaneda*, 475 S.W.2d 578, 584 (Tex. App.—Corpus Christi–Edinburg 1971, writ ref'd n.r.e.) (emphasis added); *see also Conkrite*, 10 Tex. at 141 (analyzing enforcement of "judgment liens *on the estate of* a deceased person") (emphasis added); *Cone*, 170 S.W.2d at 783 (filing abstract of judgment after debtor's death "would impair the jurisdiction of the probate court over the property of the deceased and would interrupt the orderly administration of the estate"). This is because "the property of a decedent becomes upon his death a trust estate for the benefit of all his creditors, and . . . those who have not secured preferences by lien prior to his death cannot secure the same thereafter." *Harms*, 179 S.W.2d at 583. Here, the property no longer belonged to Nobles when he died and thus did not become part of his estate. Accordingly, Porterfield's execution of the judgment lien did not constitute a claim against Nobles's estate. *See Long*, 475 S.W.2d at 584 ("A judgment that is rendered against a person during his lifetime is no claim against his estate until it has been established as are other claims."). Deutsche Bank cites no authority holding that Rule 625 bars the

execution of a section 52.001 lien against property that formerly belonged to a decedent but was conveyed subject to the lien long before his death. *Cf. Long*, 475 S.W.2d at 584 (noting, under facts that raised questions about whether decedent still owned property at his death, that "an execution sale of the property belonging to a deceased person" would "be void and of no force and effect").

For these reasons, if WPM's lien attached to the property during Nobles's life, then as a matter of law, that lien was not affected by either his 2005 conveyance of the property to Galland or his 2007 death. TEX. PROP. CODE § 52.001; *Gordon*, 352 S.W.3d at 39; *Horton*, 274 S.W. at 293. Deutsche Bank's argument to the contrary ignores the difference between "the mere rendition of judgment"—which cannot, standing alone, create a lien—and a properly indexed and recorded abstract of judgment that puts the world on notice of a judgment creditor's claim against a judgment debtor's non-exempt property. *See* TEX. PROP. CODE § 52.001; *Wilson*, 228 S.W.3d at 233. Neither the text of Rule 625 nor Deutsche Bank's cited authority support a conclusion that Rule 625 negates a judgment creditor's right to execute a judgment lien that attached to the judgment debtor's property under section 52.001 during his lifetime. *Compare, e.g.*, TEX. R. CIV. P. 625, *and Cone*, 170 S.W.2d at 783, *with* TEX. PROP. CODE § 52.001, *and Gordon*, 352 S.W.3d at 39. Because Nobles's death and the conveyance to Galland are the only two grounds on which Deutsche Bank sought to conclusively prove the superiority of its own title and the invalidity of Porterfield's, the trial court should have denied Deutsche Bank's motion for summary judgment as to its trespass to try title and quiet title claims. TEX. R. CIV. P. 166a(c).

*Did Porterfield Show He Was Entitled to Judgment on Deutsche Bank's Claims?*

Although the standard of review requires us to render the judgment the trial court should have rendered on these competing motions for summary judgment, our conclusion that Deutsche Bank was not entitled to summary judgment on its trespass to try title and quiet title claims does

not necessarily mandate rendition of judgment in Porterfield's favor. As explained above, a properly recorded and indexed abstract of judgment will only attach to a judgment debtor's non-exempt property. TEX. PROP. CODE § 52.001. "Texas law is well settled that a judgment lien that has been properly abstracted cannot attach to a homestead" while the property remains the judgment debtor's homestead. *Wilcox v. Marriott*, 103 S.W.3d 469, 473 (Tex. App.—San Antonio 2003, pet. denied). Here, it is undisputed that the property was Nobles's homestead from 1996 until at least the summer of 2005—i.e., when WPM filed its abstract of judgment in April 2005. As a result, to be entitled to traditional summary judgment on Deutsche Bank's claims, Porterfield was required to conclusively establish that Nobles abandoned the property as his homestead at some point between the filing of WPM's abstract of judgment and the November 2005 conveyance to Galland. TEX. R. CIV. P. 166a(c); *Fernandez*, 315 S.W.3d at 508. Alternatively, Porterfield was entitled to no-evidence summary judgment if the summary judgment record revealed less than a scintilla of evidence that Nobles retained the property as his homestead until he sold it on November 30, 2005. TEX. R. CIV. P. 166a(i); *King Ranch*, 118 S.W.3d at 751.

In its appellee's brief, Deutsche Bank argues Porterfield did not meet this burden and we should therefore affirm the trial court's summary judgment in its favor. However, a summary judgment movant "*must expressly state in the motion the specific grounds upon which relief is sought.*" *Hardaway v. Nixon*, 544 S.W.3d 402, 412 (Tex. App.—San Antonio 2017, pet. denied) (emphasis in original). A motion for summary judgment must stand or fall on its own merits, and we may not affirm a summary judgment for reasons not expressed in the motion itself. *Id.* Here, Deutsche Bank's motion for summary judgment did not argue that the property retained its homestead character until Nobles sold it. Furthermore, nothing in Deutsche Bank's motion otherwise disputes whether WPM's abstract of judgment attached to the property as a lien. To the contrary, Deutsche Bank's motion essentially assumed a lien properly attached to the property and

argued only that Porterfield's Deed Under Execution arising out of that lien was unenforceable for the reasons we rejected above. Because Deutsche Bank did not raise the homestead issue as a ground for summary judgment in its motion, we may not affirm the trial court's judgment in its favor on that basis. *See id.*

Unlike Deutsche Bank's motion, Porterfield's motion for summary judgment did address the homestead issue. We must therefore determine whether the trial court erred by denying Porterfield's motion on this issue. *See PHI Air Med., LLC*, 610 S.W.3d at 846. As noted above, it is undisputed that WPM's abstract of judgment did not attach as a lien against the property when WPM first filed it on April 11, 2005. *See Wilcox*, 103 S.W.3d at 473. However, Porterfield presented evidence that Nobles moved out of Texas at some point after "[Hurricane] Katrina hit New Orleans,"[2] took his equipment with him when he left, and never lived in the property again before he sold it in November of 2005. He also presented testimony from Nobles's brother, Anthony, who "assumed" Nobles's absence from Texas "was intended to be at least semi-permanent" because Nobles left "to avoid going to jail for the child support." Porterfield argued this evidence conclusively shows: (1) Nobles abandoned the property as his homestead when he left Texas; (2) WPM's abstract of judgment attached as a lien against the property at that point; and (3) because that lien was superior to the Galland note on which Deutsche Bank foreclosed, Porterfield's title arising out of it is superior to Deutsche Bank's title as a matter of law. In its response to Porterfield's motion, Deutsche Bank argued this evidence merely raised a fact question about whether Nobles abandoned the homestead character of the property.

Once a person's homestead rights in a property are shown to exist, they are presumed to continue. *Churchill v. Mayo*, 224 S.W.3d 340, 345 (Tex. App.—Houston [1st Dist.] 2006, pet.

---

[2] We take judicial notice that Hurricane Katrina made landfall in New Orleans on August 29, 2005. TEX. R. EVID. 201(b)(2), (c)(1).

denied). "Abandonment of a homestead requires both the cessation or discontinuance of use of the property as a homestead, coupled with the intent to permanently abandon the homestead." *Estate of Montague v. Nat'l Loan Invs., L.P.*, 70 S.W.3d 242, 248 (Tex. App.—San Antonio 2001, pet. denied). "The question of whether a person abandoned a homestead interest involves factual determinations." *In re Estate of Navarro*, No. 04-16-00351-CV, 2017 WL 2457080, at *3 (Tex. App.—San Antonio June 7, 2017, pet. denied) (mem. op.).

The evidence upon which Porterfield relies is some evidence of Nobles's intent to abandon the homestead. *See id.* However, on this record, we decline to hold the evidence is conclusive on this point.[3] TEX. R. CIV. P. 166a(c); *Fernandez*, 315 S.W.3d at 508. The summary judgment evidence also shows Nobles maintained a homestead tax exemption on the property until he sold it. Moreover, while Anthony testified that he assumed Nobles's departure from Texas was "semi-permanent," he also testified Nobles never explicitly stated that he would not be returning to the property. Finally, Texas law is clear that "[c]hanging residence alone is not enough to show abandonment of homestead." *Marincasiu v. Drilling*, 441 S.W.3d 551, 561 (Tex. App.—El Paso 2014, pet. denied).

Based on this evidence, reasonable people could disagree about whether the circumstances of Nobles's departure from the property "make it undeniably clear that there has been a total abandonment with an intention not to return and claim the exemption." *In re Estate of Navarro*, 2017 WL 2457080, at *3; *see also City of Keller v. Wilson*, 168 S.W.3d 802, 816 (Tex. 2005) ("Evidence is conclusive only if reasonable people could not differ in their conclusions[.]"). Because the summary judgment evidence raises a genuine issue of material fact about whether

---

[3] This analysis does not, as Porterfield argues in his motion for rehearing, "apply a heightened evidentiary standard." Instead, this analysis recognizes that a summary judgment movant bears the burden to present evidence about which reasonable people could not disagree. *See City of Keller*, 168 S.W.3d at 816.

Nobles abandoned the property as his homestead, that question—and, by extension, the question of whether the lien under which Porterfield claims title ever attached to the property—must be resolved by a factfinder. *See* TEX. R. CIV. P. 166a(c), (i); *Nixon v. Mr. Prop. Mgmt. Co., Inc.*, 690 S.W.2d 546, 549 (Tex. 1985). Accordingly, the trial court did not err by concluding Porterfield was not entitled to either traditional or no-evidence summary judgment.

Because neither party was entitled to summary judgment on Deutsche Bank's trespass to try title and quiet title claims, we sustain Porterfield's first issue in part and overrule it in part. Having reversed the summary judgment in Deutsche Bank's favor on this point, we need not consider Porterfield's contention that Deutsche Bank was not entitled to both a legal remedy under its trespass to try title claim and an equitable remedy under its quiet title action. TEX. R. APP. P. 47.1.

### Porterfield's Tort Counterclaims

In his second issue, Porterfield argues the trial court erred by granting summary judgment for Deutsche Bank on his abuse of judicial process, abuse of process, false imprisonment, civil conspiracy, and tortious interference counterclaims.

### *Abuse of Judicial Process, Abuse of Process, and False Imprisonment*

Deutsche Bank's motion for summary judgment argued that Porterfield's abuse of judicial process, abuse of process, and false imprisonment counterclaims were barred because Porterfield filed them outside the governing two-year statute of limitations. *See* TEX. CIV. PRAC. & REM. CODE ANN. § 16.003(a). As support for this assertion, Deutsche Bank's motion pointed to Porterfield's own pleadings, which recited that the underlying events occurred in January of 2016, and noted that Porterfield filed his counterclaims in December of 2018. *See* TEX. R. CIV. P. 166a(c) (summary judgment is appropriate if, inter alia, the pleadings on file when the motion is heard show movant is entitled to judgment as a matter of law).

On appeal, Porterfield does not dispute that these claims are generally subject to a two-year statute of limitations, nor does he dispute that more than two years passed between the events underlying these claims and the filing of his counterclaims. However, he argues those claims survive under section 16.069 of the Texas Civil Practice and Remedies Code. *See* TEX. CIV. PRAC. & REM. CODE ANN. § 16.069 (counterclaim or cross claim that "arises out of the same transaction or occurrence that is the basis of an action" but would otherwise be barred by limitations may be filed "not later than the 30th day after the date on which the party's answer is required"). Deutsche Bank responds that Porterfield waived section 16.069's protections because he did not assert that statute in his pleadings.

Like the discovery rule, section 16.069 "is a plea in confession and avoidance" because it "avows and confesses the truth in the averments of fact in the petition . . . but then proceeds to allege new matter which tends to deprive the facts admitted of their ordinary legal effect, or to obviate, neutralize, or avoid them." *Woods v. William M. Mercer, Inc.*, 769 S.W.2d 515, 517 (Tex. 1988) (discovery rule); *Santander Consumer USA, Inc. v. Palisades Collection, LLC*, 447 S.W.3d 902, 907 (Tex. App.—Dallas 2014, pet. denied) (section 16.069). "[A] party seeking to avail itself of a rule in avoidance of a statute of limitations must affirmatively plead its theory of avoidance in its original petition or a supplemental petition." *Cole v. McWillie*, 464 S.W.3d 896, 903 (Tex. App.—Eastland 2015, pet. denied) (citing TEX. R. CIV. P. 94). Here, Porterfield did not affirmatively plead section 16.069 in his live pleading or any supplemental pleading. As a result, he waived his reliance on that statute.[4] *See id.* (citing *Woods*, 769 S.W.2d at 518). Accordingly,

---

[4] In support of his position that he did not waive the application of section 16.069, Porterfield's motion for rehearing presents analysis and authority that he did not assert in either his opening brief or his reply brief on original submission. We generally "do not base our rulings on arguments raised for the first time on rehearing." *AVCO Corp. v. Interstate Sw., Ltd.*, 251 S.W.3d 632, 654 (Tex. App.—Houston [14th Dist.] 2007, pet. denied).

we affirm the trial court's summary judgment for Deutsche Bank on Porterfield's abuse of judicial process, abuse of process, and false imprisonment counterclaims.

*Civil Conspiracy*

Deutsche Bank also moved for summary judgment on Porterfield's civil conspiracy counterclaim on limitations grounds, noting that Porterfield pleaded that counterclaim was based on events that occurred between 2011 and 2015. Porterfield's brief on appeal contends his civil conspiracy counterclaim was supported by events that occurred "through 2018." But because he did not raise that argument in response to Deutsche Bank's motion for summary judgment, we do not consider it.[5] *See Watts v. Watts*, 396 S.W.3d 19, 23 (Tex. App.—San Antonio 2012, no pet.) (argument on appeal must comport with argument in trial court).

In its motion for summary judgment, Deutsche Bank cited case law holding that the statute of limitations for civil conspiracy is two years.[6] In response to Deutsche Bank's motion for summary judgment, Porterfield did not challenge Deutsche Bank's assertion that the allegedly tortious conduct underlying his civil conspiracy counterclaim occurred between 2011 and 2015, nor did he dispute that the tortious acts underlying that counterclaim were subject to a two-year statute of limitations. Additionally, he did not cite evidence or authority allowing him to challenge that alleged conduct between three and seven years after it occurred. Finally, as noted above, because he did not assert section 16.069's savings clause in his live pleading or a supplemental pleading, he waived any potential reliance on that statute. *Cole*, 464 S.W.3d at 903. For these

---

[5] Porterfield obtained leave from the trial court to file two responses to Deutsche Bank's motion for summary judgment. His second response argued that his tortious interference counterclaim arose out of events that occurred in 2018, but he did not tie that argument to his civil conspiracy counterclaim. In fact, neither of his summary judgment responses mentioned the word "conspiracy."

[6] We note that the Texas Supreme Court recently held that "civil conspiracy is not an independent tort" and, as a result, is governed by the statute of limitations for the torts underlying those claims. *Agar Corp., Inc. v. Electro Circuits Int'l, LLC*, 580 S.W.3d 136, 143 (Tex. 2019).

reasons, we hold the trial court did not err by granting summary judgment for Deutsche Bank on Porterfield's civil conspiracy counterclaim on limitations grounds.

*Tortious Interference*

Porterfield's tortious interference counterclaim arose out of a 2018 "special alert issued by Deutsche Bank's title company" regarding this property, which he contended interfered with his attempt to refinance his primary residence. In its motion for summary judgment, Deutsche Bank argued and presented evidence that it had no role in issuing the special alert.

Porterfield first argues that he pleaded tortious interference with an existing contract as opposed to interference with a prospective business relationship, and he contends Deutsche Bank's motion challenged only the latter of those claims. However, Deutsche Bank's motion for summary judgment argued it "did not engage in *any* conduct relating to the title company's special report." (emphasis added). Regardless of whether Porterfield's tortious interference counterclaim was based on an existing contract or a prospective business relationship, this assertion that Deutsche Bank was not involved in the conduct underlying that claim would—if proven—conclusively negate at least one essential element of it. *See Wal-Mart Stores, Inc. v. Sturges*, 52 S.W.3d 711, 726 (Tex. 2001) (claimant asserting tortious interference with prospective business relationship "must prove that the defendant's conduct was independently tortious or wrongful"); *Prudential Ins. Co. of Am. v. Fin. Review Servs., Inc.*, 29 S.W.3d 74, 77 (Tex. 2000) (tortious interference with existing contract must be supported by, inter alia, evidence of "a willful and intentional act of interference with the contract").

As support for its assertion that it was not involved in the underlying conduct, Deutsche Bank presented an affidavit from Josephine McGrath, an underwriter with Fidelity National Title Group, the title company on this transaction. On appeal, Porterfield challenges McGrath's affidavit on several grounds. He first asserts that the affidavit "does not identify what documents [McGrath]

reviewed" and "does not assert that she is the custodian of the records, and does not attempt to prove them up as business records under Texas Rule of Evidence 803(6)." These complaints assert defects in the form of the affidavit that must be "specifically pointed out by objection" in the trial court or they are waived. TEX. R. CIV. P. 166a(f); *Vega v. AutoZone W., Inc.*, No. 04-12-00724-CV, 2013 WL 2446710, at *3–4 (Tex. App.—San Antonio June 5, 2013, no pet.) (mem. op.) (hearsay objection to a summary judgment affidavit is a defect in form that cannot be raised for the first time on appeal). Because Porterfield did not raise these challenges in the trial court, we do not consider them. *See* TEX. R. APP. P. 33.1; *Vega*, 2013 WL 2446710, at *3–4.

Porterfield also argues McGrath's affidavit does not show she has personal knowledge of the stated facts. Even though Porterfield did not raise this objection below, recent case law from the Texas Supreme Court indicates no objection was required here. *Compare Marks v. St. Luke's Episcopal Hosp.*, 319 S.W.3d 658, 666 (Tex. 2010) ("An affidavit not based on personal knowledge is legally insufficient."), *and Kerlin v. Arias*, 274 S.W.3d 666, 668 (Tex. 2008) ("To have probative value, an affiant 'must swear that the facts presented in the affidavit reflect his personal knowledge.'") (quoting *In re E.I. DuPont de Nemours & Co.*, 136 S.W.3d 218, 224 (Tex. 2004)), *with Grand Prairie Indep. Sch. Dist. v. Vaughan*, 792 S.W.3d 944, 945 (Tex. 1990) (requiring party to object on personal knowledge grounds to preserve argument that affidavit does not establish affiant's personal knowledge).

"For an affidavit to have probative value, an affiant must swear that the facts presented in the affidavit reflect his personal knowledge." *In re E.I. DuPont de Nemours & Co.*, 136 S.W.3d at 224. Here, McGrath's affidavit, which states she has "personal knowledge of the contents hereof," satisfies that baseline requirement. Porterfield argues, however, that McGrath's assertion of personal knowledge is insufficient because it is based on her "review of the records maintained by

Fidelity." But it is well-established that "an affiant's acknowledgment of the sources from which he gathered his knowledge does not violate the personal knowledge requirement." *Id.*

An affiant's assertion of "personal knowledge may be based on a review of corporate business records." *Botello v. MidFirst Bank*, No. 05-19-000461-CV, 2020 WL 3263434, at *3 (Tex. App.—Dallas June 17, 2020, no pet.) (mem. op.). In her affidavit, McGrath stated that she is an underwriter with Fidelity National Title Group and that she is familiar with the records of that entity "and its affiliated entities, including Fidelity National Title Insurance Group."[7] She specified that she has reviewed and is familiar with those entities' records concerning the property at issue in this lawsuit, including the associated title insurance policy and at least three claims made on that policy. These assertions are sufficient to show McGrath's personal knowledge of the facts recited in her affidavit, and we reject Porterfield's argument to the contrary. *See Asshauer v. Glimcher Realty Tr.*, 228 S.W.3d 922, 926–27 (Tex. App.—Dallas 2007, no pet.).

Finally, Porterfield argues McGrath's affidavit is conclusory and "constitute[s] no evidence that the Bank was not involved in the issuance of the special alert." After explaining her familiarity with the records she reviewed and the facts she gleaned from them, McGrath identified Fidelity as the underwriter of the property's title policy and Deutsche Bank as the trustee on a mortgage note. She gave a brief history of the claims submitted to Fidelity under the property's title policy and Fidelity's responses to those claims. She explained that as part of its internal underwriting on the title policy, Fidelity issued the special alert "to notify its underwriters of

---

[7] McGrath's affidavit refers to both Fidelity National Title Group and Fidelity National Title Insurance Co. collectively as "Fidelity" and, as noted above, states she is familiar with both entities' records concerning the property at issue here. In a footnote, Porterfield complains that McGrath "gives no explanation of why or how an underwriter for Company A would also be familiar with the records of Company B and Company C" and that she does not "explain the relationship between these different entities." Because Porterfield neither raised that argument below nor cites authority on appeal to support his assertion that such a showing was required, we do not reach this issue. *Ruffin v. Sanchez*, No. 04-16-00759-CV, 2017 WL 4014651, at *1 (Tex. App.—San Antonio Sept. 13, 2017, no pet.) (mem. op.).

competing claims to the Property." She also stated that "Fidelity was the party that decided to issue the Special Alert," that it "did not confer with" Deutsche Bank in deciding to do so, and that Deutsche Bank "did not have any role in issuing the Special Alert."

Because McGrath's affidavit explained the facts underlying her inferences and conclusions, we reject Porterfield's assertion that the affidavit was conclusory. *See La China v. Woodlands Operating Co., L.P.*, 417 S.W.3d 516, 520–22 (Tex. App.—Houston [14th Dist.] 2013, no pet.). McGrath's affidavit, even when considered in the light most favorable to Porterfield, shows the special alert resulted from Fidelity's actions, not from Deutsche Bank's. That evidence conclusively negated at least one required element of Porterfield's tortious interference claim and was therefore sufficient to shift the burden to Porterfield to present more than a scintilla of controverting evidence. TEX. R. CIV. P. 166a(c); *Weed v. Frost Bank*, 565 S.W.3d 397, 401 (Tex. App.—San Antonio 2018, pet. denied). But Porterfield did not attempt to controvert McGrath's affidavit in his summary judgment response. Instead, his response stated, "On May 2, 2018, Fidelity National Title Group (FTNG) [*sic*] issued a 'Special Alert,'" and he identified no evidence showing Deutsche Bank had any role in that issuance. Although his appellate brief refers to Fidelity as "Deutsche Bank's title company," he presented no evidence below that Fidelity's actions can be imputed to Deutsche Bank. Moreover, Porterfield's summary judgment response affirmatively stated he "ha[d] no way of knowing" why Fidelity decided to issue the special alert.[8] On this record, the trial court did not err by concluding Deutsche Bank was entitled to judgment as a matter of law on Porterfield's tortious interference claim. TEX. R. CIV. P. 166a(c); *Weed*, 565 S.W.3d at 401.

---

[8] Porterfield's summary judgment response blamed this lack of knowledge on Deutsche Bank's purported "refus[al] to name a corporate representative who can be deposed to answer such questions." The appellate record does not contain any motions to compel Deutsche Bank to comply with Porterfield's discovery requests.

We overrule Porterfield's second issue.

### *Porterfield's Claim for Improvements*

In his final issue, Porterfield argues the trial court erred by granting Deutsche Bank more relief than it requested by rendering a final judgment disposing of Porterfield's claim for improvements. Deutsche Bank responds that neither Porterfield's pleadings nor the summary judgment evidence support his claim for improvements.

### *Applicable Law*

Texas is a fair notice pleading jurisdiction. TEX. R. CIV. P. 45; *In re M.G.N.*, 491 S.W.3d 386, 406 (Tex. App.—San Antonio 2016, pet. denied). Under this standard, we "'look[] to whether the opposing party can ascertain from the pleading the nature and basic issues of the controversy and what testimony will be relevant.'" *Pauli v. Hayes*, No. 04-17-00026-CV, 2018 WL 3440767, at *7 (Tex. App.—San Antonio July 18, 2018, no pet.) (mem. op.) (quoting *Horizon/CMS Healthcare Corp. v. Auld*, 34 S.W.3d 887, 896–97 (Tex. 2000)).

Section 22.021 of the Texas Property Code, entitled "Claim for Improvements," allows a defendant in a trespass to try title action to seek compensation for improvements to the property upon certain specified pleadings and proof. TEX. PROP. CODE ANN. § 22.021. Similarly, section 22.041 of the Property Code, entitled "Plea for Removal of Improvements," allows a defendant in a trespass to try title action to remove improvements he added to the property, again provided he has satisfied certain pleading and proof requirements. *Id.* § 22.041.

### *Application*

In his live pleading, Porterfield alleged that if Deutsche Bank owned the property, he "should be allowed to remove the improvements" he made to the property "or be compensated for same." He also alleged that he: (1) had possessed the property since November 14, 2015; (2) had a good faith belief in his own title "and thus ha[d] no intent to defraud"; (3) had made "many

improvements" to the property, "including countless plumbing parts and fixtures, roofing, flooring, walls, trim, doors and HVAC"; and (4) was willing to post "any bond the Court may order."

Because Deutsche Bank did not specially except to Porterfield's pleadings, we are required to construe those pleadings liberally in Porterfield's favor. *Brumley v. McDuff*, 616 S.W.3d 826, 831 (Tex. 2021). Porterfield's allegations address most, but not all, of the specific pleading requirements of sections 22.021 and 22.041. TEX. PROP. CODE §§ 22.021(c), 22.041(b). Those allegations were sufficient to alert Deutsche Bank that Porterfield believed he was entitled to either remove or be reimbursed for his improvements to the property. *Pauli*, 2018 WL 3440767, at *7. We therefore reject Deutsche Bank's claim that any deficiency in Porterfield's pleadings allowed the trial court to summarily dismiss his claim for improvements.

As for Deutsche Bank's contention that the evidence does not support a finding in Porterfield's favor on his claim for improvements, it did not assert that argument in its motion for summary judgment. "It is axiomatic that one may not be granted judgment as a matter of law on a cause of action not addressed in a summary judgment proceeding." *Chessher v. Sw. Bell Tel. Co.*, 658 S.W.2d 563, 564 (Tex. 1983). Because Deutsche Bank did not seek summary judgment on Porterfield's claim for improvements, the trial court erred by granting judgment in its favor on that claim.

We sustain Porterfield's third issue.

## CONCLUSION

We reverse the trial court's judgment in Deutsche Bank's favor on its trespass to try title and quiet title actions, as well as the trial court's judgment on Porterfield's claim for improvements. We remand those issues for further proceedings consistent with this opinion. We affirm the portions of the trial court's judgment that: (1) deny Porterfield's traditional and no-evidence motions for summary judgment; and (2) grant Deutsche Bank's motion for summary

judgment on Porterfield's abuse of judicial process, abuse of process, false imprisonment, civil conspiracy, and tortious interference counterclaims.

Beth Watkins, Justice